**WILLARD C. BEACH AIR BRUSH CO. v. GENERAL MOTORS CORPORATION et al.**

Civ. A. No. 1093.

United States District Court
D. New Jersey.

Feb. 20, 1950.

Zucker & Goldberg, by Maurice J. Zucker, Newark, N. J., for plaintiff.

Carpenter, Gilmour & Dwyer, by James D. Carpenter, Jr., Jersey City, N. J., and Drury W. Cooper, New York City, for defendants.

FAKE, Chief Judge.

The issues here arise on motions to vacate and set aside an order or judgment of this court entered in the above entitled cause on the 9th day of June, 1948.

The trial of this cause of action was opened to the court and jury on the 30th day of October, 1947, and continued thereafter ending on the 13th day of November, covering some 5 or 6 days of actual trial when a mistrial was declared.

Prior to the opening of the trial, counsel for plaintiff, in the presence of the counsel for defendant, made known to the court

that the plaintiff, Mr. Beach, suffered with a very uncommon malady, technically known as hypoglycemia, which means a low blood sugar. This disease is said to be the opposite of diabetes in that the one so afflicted suffers with a lack of sugar in his blood, while in diabetes there is an excess of sugar. It was explained at this time that Mr. Beach would be obliged to eat candy and keep a lollypop in his mouth while on the witness stand. If he did not continue to supply sugar to his system in this way he would suffer a collapse or perhaps a heart attack. The record before me discloses that every reasonable deference was shown to Mr. Beach by reason of his ailment, and with the consent of counsel, the jury was advised as to his unusual ailment.

On the 31st day of October, 1947, Mr. Beach took the witness stand and for several days thereafter underwent direct examination by his counsel. At about noon on the 5th day of November, 1947 Mr. Carpenter, of counsel for defendant, commenced the Cross-examination of Mr. Beach. This lasted for the balance of the day.

The next morning Mr. Beach failed to appear for continuation of cross-examination. Plaintiff's counsel then produced Dr. Hoyer who, being sworn as a witness, testified concerning the ailment of Mr. Beach whom he had treated since the year 1937. He saw Mr. Beach at ten o'clock in the morning just before coming to court. He found him in bed with "blood pressure 120 over 70 * * * in a nervous state. His heart was palpitating. He seemed very much disturbed; * * * had a lollypop in his mouth trying ·to get as much sugar as he could in his system. * * * Question: Does he get any attacks in that condition or any collapses? A. Yes, he has. Q. Have you seen him in these? A. Yes, I have." The doctor then proceeded further, stating that it would be entirely possible that Mr. Beach would suffer with such attacks if the case was called for trial in the future, and he could not say that if an adjournment were taken until the following Monday Mr. Beach would be in shape to testify. He did definitely state that he could not be in condition to proceed the next day.

When the court convened the next morning Mr. McGeehan, representing the plaintiff, moved for a mistrial on the ground of the disability of Mr. Beach. The motion was granted.

Thereafter a short conference took place between the court and counsel, and the court suggested that perhaps a settlement might be made in view of all the circumstances.

Nothing further was brought to the attention of the court for many months or until the 7th day of June, 1948 when a rule to show cause was made returnable why an accord and satisfaction should not be entered.

On that day I received a letter from Mr. Beach which I brought to the attention of counsel in which he expresses "deep appreciation of the considerations shown me by your Honor and to confirm my full confidence in the impartial justice governing the court's rulings." He makes reference to his incurable malady and states, "It was only the refusal of my body to comply with my will that prevented my appearance to my everlasting humiliation and regret." He states that he is still personally unable to appear in court and that, to quote: "I have asked the attorney who has represented me in a Chancery matter involving the attempt of the former Mrs. Beach to obtain funds from me to appear in my behalf, and Mr. Howard Demarest will represent me on a proceeding before you." The letter is too long to set up here in full. He does admit in this letter signing the releases in issue and indicates a desire not to abide the result thereof, explaining that he was ill when he signed them. Nothing in the letter disclosed to the court anything indicating a disordered mind or a failure to comprehend the effects of his acts.

On the 8th day of June, 1948, one day before the entry of the order herein complained of, Mr. Beach wrote a letter to his attorney, Mr. Brown, in which he says:

"This will be your authority to request that checks in settlement of the above matter be drawn and delivered to you as follows:

Check to the order of:

Willard C. Beach Air Brush Co. in the sum of ............... $ 1,000.00

Check to the order of:

Willard C. Beach, individually, in the sum of ............... 13,000.00

Check to the order of:

John W. McGeehan, Jr. & Leonard B. Brown, to cover costs, fees, and disbursements in connection with the preparation and trial of the above case, in the sum of ................ 11,000.00

In the Presence of     Very truly yours,
R. M. Atwater, Jr.     Willard C. Beach
Dorothy M. Geiger     Individually, and as President of Willard C. Beach Air Brush Co."

Mr. Brown, by letter of June 8, 1948, enclosed the above letter of Beach to Mr. Dwyer of the firm of Carpenter, Gilmour & Dwyer, representing defendants.

These letters are brought to the attention of the court in the affidavit of James D. Carpenter, Esq. on the issue now before the court together with a photostatic copy of the release, and also cancelled checks aggregating $25,000 made payable in conformity with the aforesaid letter from Beach to Brown.

On the hearing of this motion I found the facts as stated in Mr. McGeehan's affidavit to be true and I find them as facts on the issues now before me. A reading of this affidavit gives a detailed picture of just what transpired with relation to the execution and delivery of the aforesaid release.

The letter received by the court from Mr. Beach indicates that Mr. Demarest would appear for him on the issues now before the court and Mr. Demarest was present. He stated, however, that he appeared specially "only" for the purpose of objecting to the impounding of the $25,000. From this it would appear that while Mr. Beach had authorized Mr. Demarest to appear in the matter generally according to the terms of his letter, Mr. Demarest did not do so. This left the court in the position as though Mr. Beach was there personally and on notice since counsel appear-

ed for him, and that he remained mute on the issues before the court in relation to the release. However, any defect by virtue of Mr. Beach being without counsel is cured by his subsequent acceptance of the checks aggregating $25,000 in settlement. Upon the acceptance and cashing of these checks by Mr. Beach, Mr. McGeehan was in duty bound to deliver the release whether he then represented Mr. Beach or not, since the checks which he authorized acceptance of were given in consideration for the release.

The plaintiff now appears in this argument by substituted counsel. In the brief it is argued that the order of this court, entered the 9th day of June, is void for the reason that Mr. Beach was not represented by counsel and that Mr. McGeehan had delivered the release and appeared in court without plaintiff's authority.

It should be remembered in this connection that Mr. McGeehan was not only the attorney for Mr. Beach but was also an officer of this court and thus bound to deal with the court in an honorable manner. His affidavit discloses that this is exactly what he did, while at the same time he stated that he no longer represented Mr. Beach and I find that Mr. Beach was represented by Mr. Demarest who chose to remain mute on the issue before the Court. I, therefore, conclude that the judgment entered by the court was not void.

It is further alleged in the brief for plaintiff that this court was deceived as to the facts. Under this heading attorney for plaintiff argues in effect that such an order as made in this instance by the court could not be made in a summary manner, but could be made only after plenary suit. I do not deem it necessary for present purposes to decide that point since from the record before the court it conclusively appears that plaintiff is estopped from raising that objection at this late date. Some eleven months and eighteen days had elapsed since the entry of the judgment complained of. It is, therefore, not made within a reasonable time. Reference to Federal Rules of Civil Procedure, rule 60(b), 28 U.S.C.A., discloses that the one year period therein provided is a limitation which does not prevent a consideration of the doctrine of rea-

sonable time, and the court is left with power to deal with the subject of reasonable time within the one year period.

Moreover, there is no tender of a restoration of the status quo ante. Plaintiff has accepted the sum of $25,000 from the defendant and such a motion as that now before the court should not be heard except upon a tender of that sum of money into the Registry of the court or perhaps to the defendant. This is time honored equity doctrine.

As bearing upon some of the issues raised herein see the opinion of the Court of Errors and Appeals of New Jersey in Trenton Street Railway Co. v. Lawlor, 74 N.J.Eq. 828, 71 A. 234; also see Headley v. Leavitt, 65 N.J.Eq. 748, 55 A. 731. In this connection it should be noted that this court functions at all times clothed with equitable, as well as legal, powers.

The motion to set aside the judgment or order of this court of June 9, 1948, is denied.