Robert A. WHITEBIRD et al., Plaintiffs,

v.

The EAGLE–PICHER COMPANY,
Defendant.

Pearl Crawfish PEERY et al., Plaintiffs,

v.

The EAGLE–PICHER COMPANY,
Defendant.

Ida Louise McQuillin KILLOUGH,
Plaintiff,

v.

The EAGLE–PICHER COMPANY,
Defendant.

Nos. 5929, 6266, 6267.

United States District Court
N. D. Oklahoma.

Sept. 9, 1966.

James R. Eagleton, Tulsa, Okl., W. Rodney DeVilliers, Albuquerque, N. M., for plaintiffs.

John R. Wallace, Ben T. Owens, Melvin H. Landers, Miami, Okl., for defendant.

DAUGHERTY, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an action by the various plaintiffs in the three consolidated cases to recover from the defendant additional royalties alleged to be due under certain mining leases. After trial before the Court the following findings of fact and conclusions of law are entered for the consolidated cases:

## FINDINGS OF FACT

### I

The lands in question are Indian lands allotted to members of the Quapaw Indian Tribe and are located in Ottawa County, Oklahoma, in a mining area known as the Tri-State Mining District. Two sets of leases are involved, the first set being referred to as the 1922 leases since they were accomplished in that year or shortly thereafter, which leases expired on March 2, 1946, and the second set being referred to as the 1945 leases, since they were accomplished in that year to be effective March 1, 1946, and which are still in effect. All leases were duly executed by appropriate representatives of the Secretary of the Interior. The defendant is the lessee or successor to or assignee of all such leases involved herein.

### II

The defendant or its predecessors began mining operations in 1922, which operations have been continued, with intermittent interruptions, from 1922 to the present time. The basic mining operation so conducted has been substantially the same throughout the years. Crude ore is dynamited under-ground and hoisted to the surface, then moved to a concentrating plant known as a mill. At the mill, zinc concentrates, lead concentrates and tailings are recovered from the crude ore. No other products result from the mining or milling operations. There is an established open market price for zinc and lead concentrates but no known usage of the same without extensive and expensive treatment at other plants. From such treatment at other plants zinc metal, cadmium metal, germanium metal, gallium metal, and sulphur and sulphuric acid may be recovered from zinc concentrate and only lead metal may be recovered from lead concentrate.

### III

The 1922 leases provide for royalties to be paid to the lessors, as follows:

" * * * a royalty of 10% upon all ores mined and sold from said land during the life of this lease, * * *."

Under this provision the defendant paid royalties through the years equal to ten percent of the established open market price of zinc and lead concentrates as and when they were produced at the mill.

### IV

In 1937, litigation was begun by the plaintiffs or their predecessors in title (except in case No. 6267) in the United States District Court for the Southern District of Ohio against the defendant, in which, among other claims, the plaintiffs therein sought recovery for royalties allegedly due, not on the basis of ten percent of the established open market price of the zinc and lead concentrates as and when produced at the mill, but on the basis of ten percent of the values recovered or recoverable as the result of the defendant utilizing or processing the concentrates at other plants and thereby producing and selling therefrom some or all of the aforementioned metals or elements. The United States of America at the request of the Secretary of the Interior intervened in this action on behalf of the plaintiffs therein and brought into the case the plaintiff or her predecessors in title in case No. 6267 herein. By a Stipulation executed on December 30, 1941, by the attorneys for the plaintiffs, attorneys for the defendant and attorneys for the United States of America and approved by the United States District Judge, the alleged claim set out above was dismissed by order of the Court with prejudice, the plaintiffs specifically waiving, relinquishing and

surrendering their claims to additional royalties under the 1922 leases based on final sale prices as against zinc and lead concentrate prices and the other claims asserted in the case were fully compromised and settled and such other claims then also dismissed with prejudice. The proceeds of the compromise and settlement were received and distributed to and accepted by the plaintiffs or their predecessors in title. Plaintiffs offered no proof herein to deny the authenticity of the Stipulation and Order of Dismissal or to deny the authority of their attorneys of record or the United States of America to enter into the Stipulation, compromise certain of their claims and approve the Dismissals with prejudice on their behalf.

V

In 1945, new leases were negotiated to start in 1946 with the expiration of the 1922 leases. The plaintiffs were represented by the United States of America in these negotiations. The 1945 leases, in view of the controversy raised by the 1937 litigation in Ohio, provide for royalties to be paid to the lessors, as follows:

"* * * a royalty of 10% of the sale price of all ore and concentrates produced and sold from said premises, said sale price for the purpose of determining royalty to be computed as in paragraph 2 hereinafter provided."

Paragraph 2 of the 1945 leases provides:

"2. It is stipulated and provided that the sale price basis for the determination of the rates and the amount of royalty shall not be less than the highest and best obtainable market price of the zinc and lead ores and concentrates, at the usual and customary place of disposing of such ores and concentrates, at the time of disposition; and it is further stipulated and provided that the right is reserved to the Secretary of the Interior to determine and declare such market price, if it is deemed necessary by him to do

so for the protection of the interest of the lessors."

Sub-paragraph (E) of paragraph 2 of the 1945 leases provides:

"(E) 'Concentrates' is hereby defined to mean the marketable zinc and/or lead mineral as recoverable at the mill or concentrating plant where treated, including in addition to lead and zinc metal, any and all other metals or elements contained in such concentrates."

VI

For the years after the termination of the Ohio litigation as to the 1922 leases and under the 1945 leases, the defendant continued to pay ten percent royalty based on the established open market price of said zinc and lead concentrates as and when produced at the mill. During a slump period in 1960 a reduction in this royalty was agreed upon between the parties and the United States of America. Until this litigation the defendant received no suggestions that the royalty payments should be increased or that a change should be effected in the manner of computing the same. It has been the uniform position of the defendant throughout that when it paid a ten percent royalty on the established open market price for zinc and lead concentrates as and when produced at the mill it did not thereafter owe any royalty upon the values added by extensive processing by defendant and others at other plants.

VII

The defendant has not kept secret the fact that it was realizing the above metals and elements from the concentrates, but to the contrary has openly published this fact by periodicals and other means and specifically advised the Bureau of Mines of the Department of the Interior, which in turn published this information in public folders and annual year-books. The plaintiffs knew this by 1937 if not before as evidenced by the 1937 Ohio litigation.

## VIII

The Court finds the issues of fact generally in favor of the defendant and against the plaintiffs.

## CONCLUSIONS OF LAW

### I

The Court has jurisdiction of the parties to this action and the subject matter hereof.

### II

The representatives of the Secretary of the Interior and the Secretary of the Interior who executed and approved the leases involved and otherwise acted in connection with said leases were authorized by law to so act in all instances. Act March 3, 1921, Sec. 26; 41 Stat. 1248; 5 U.S.C. § 483; Whitebird et al. v. Eagle-Picher Lead Company et al. (Tenth Cir.–1934), 40 F.2d 479.

### III

■ Any Department of Interior regulations which may be inconsistent with the leases involved herein were suspended or superseded by the terms of the leases, since the leases were executed by representatives of the Secretary of the Interior and approved by the Secretary of the Interior and any inconsistent regulations were suspended or superseded by this action by them. And all other actions of the Secretary of the Interior or his representatives, taken in connection with said leases which may have been inconsistent with any regulations of the Department of Interior were valid and legal, such regulations being suspended or superseded by their actions. Hallam v. Commerce Mining & Royalty Co. (Tenth Cir.–1931), 49 F.2d 103.

### IV

■ An attorney employed to prosecute an action has no general or implied authority to compromise or dismiss the action with prejudice or stipulate in such manner as to surrender substantial rights. 7 Am.Jur.2d, Attorneys at Law, Sections 126, 125 and 121; 56 A.L.R.2d 1290. However, there is a rebuttable presumption in favor of the authority of an attorney of record to compromise and settle a pending action. United States v. Beebe, 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563; 7 Am.Jur.2d, Attorneys at Law, Section 126; 60 A.L.R. 120; 30 A.L.R.2d 949, Sec. 6. And it will be presumed, prima facie, that an attorney of record acted under and pursuant to special authority to dismiss with prejudice. 56 A.L.R.2d 1290, at Section 2(d), pages 1295–1296. An unauthorized stipulation, compromise or dismissal with prejudice may also be ratified by implication or an estoppel or waiver may be created by the client accepting the resulting fruits with knowledge, by negligence, by inattention or by acquiescence. 7 Am.Jur.2d, Attorneys at Law, Section 127.

### V

■ The Stipulation and Order of Dismissal with prejudice entered by agreement in the United States District Court for the Southern District of Ohio on December 30, 1941, constituted an agreed interpretation of the royalty payment provisions of the 1922 leases and is conclusive of all issues herein arising under such leases with reference to the payment of royalties.

### VI

■ Upon the payment of royalties under the 1945 leases based on the established open market price of zinc and lead concentrates, and as and when produced at the mill, the defendant acquired title thereto and to all metals or elements which formed an integral part of such concentrates and defendant is not required under said 1945 leases and the facts, circumstances, and intent of the parties herein to pay any royalty on the subsequent sale price of metals or elements thereafter recovered by processing said zinc and lead concentrates. Kretni Development Co. v. Consolidated Oil Corp. (Tenth Cir–1934) 74 F.2d 497.

## VII

The wording of the lease in the case of Haynes v. Eagle-Picher Company (Tenth Cir.–1961), 295 F.2d 761, is totally different than in the 1922 and 1945 leases herein. Moreover, as to the 1945 leases the knowledge possessed by the parties at the time the leases were executed is totally different than in the Haynes case.

## VIII

The claim of plaintiffs is without merit, plaintiffs are not entitled to recover herein against the defendant in any sum whatsoever and judgment should be entered herein for the defendant dismissing the plaintiff's causes of action. Counsel for defendant will prepare the judgment. Rule 58, Federal Rules of Civil Procedure, 28 U.S.C.A.