**Nehemiah MUNGIN et al., Plaintiffs,**

v.

**FLORIDA EAST COAST RAILWAY COMPANY, Inc., a Florida corporation, Defendant.**

**No. 67–764–Civ–J.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Aug. 11, 1970.

Chris Dixie, Houston, Tex., and Hardee, Ott & Hamilton, P. A., Tampa, Fla., for appellant.

Milledge & Horn, Miami, Fla., and Fisher & Phillips, Atlanta, Ga., for appellee.

Beckham & McAliley, Miami, Fla., amicus curiae.

## FINDINGS OF FACT

SCOTT, District Judge.

### 1.

Plaintiffs are individuals, residents of Florida, who were former employees, or are present employees of Defendant.

### 2.

Intervenor, International Association of Railway Employees (hereinafter IARE) is a labor organization within the meaning of the Railway Labor Act, 45 U.S.C. Sections 151–188, and is also, within the meaning of that Act, the duly certified representative of the craft or class of locomotive firemen employed by Defendant.

### 3.

Defendant, Florida East Coast Railway Company, Inc., (hereinafter FEC) is a "carrier" within the meaning of the Railway Labor Act and is a Florida corporation doing business within the Middle District of Florida and having its main office at St. Augustine, Florida.

### 4.

In November, 1967, Plaintiffs commenced the present action against Defendant alleging violations of the Railway Labor Act and the wholesale abrogation by Defendant of its collective bargaining agreements with IARE. On March 22, 1968, this Court dismissed the complaint for lack of jurisdiction. On September 22, 1969, the United States Court of Appeals for the Fifth Circuit overruled the dismissal of this court, finding that the court had jurisdiction and that the complaint stated a cause of action, and remanded the case for further proceedings in compliance with its opinion. Mungin v. Florida East Coast Ry. Co., 416 F.2d 1169 (5th Cir. 1969). On December 22, 1969, this court denied certain motions of Defendant to dismiss, to strike and to sever, and to stay pending disposition of a writ of certiorari, and ordered Defendant to answer the complaint on or before January 30, 1970. No answer has yet been filed. As of December 30, 1969, an application for additional time to petition for writ of certiorari was pending in the United States Supreme Court.

### 5.

Between approximately December 17 or 18, 1969, and December 29, 1969, various discussions between counsel for Defendant and counsel for Plaintiffs[1] were

1. Through March 11, 1970, and apparently until on or about April 4, 1970, all the named Plaintiffs, plus some 20 or so additional members of the class were represented by Allan Milledge, Esquire, and Richard L. Horn, Esquire, of the firm of Milledge & Horn. All references to Counsel for Plaintiffs hereafter are to Mil-

held concerning settlement of this case and an agreed settlement was reached on December 29, 1969.

6.

On December 30, 1969, a hearing in this case was held before The Honorable Charles R. Scott, Judge of this Court, concerning certain motions in the case and preliminary approval of the agreed upon settlement.

7.

On December 30, 1969, the Plaintiffs moved this Court for permission to amend their complaint to state a cause of action on behalf of a class composed of all employees or former employees of the Defendant Florida East Coast Railway Company who held seniority in the craft or class of Locomotive Firemen on January 23, 1963, or thereafter to date, and who were available, qualified, entitled and willing to perform work as Locomotive Firemen for the Defendant Railway since January 23, 1963, and would have performed such work but for illegal conduct of the Defendant Railway as alleged in their complaint. Such amendment was allowed by this Court and was filed.

8.

On December 30, 1969, IARE filed a motion seeking to intervene in this action as a party Plaintiff and said motion was granted by this Court and IARE did intervene and did file its complaint in intervention. The complaint of IARE was substantially identical in its allegations with the complaints already filed by Plaintiffs.

9.

On December 30, 1969, Plaintiffs and IARE moved this Court for a determination under Rule 23, Federal Rules of Civil Procedure, that this suit could be maintained as a class action. This Court granted said motion, allowing the suit to be maintained as a class action under Rule 23(b) (1) and (b) (2) on behalf of the class as set forth in the amended complaint of Plaintiffs.

10.

On December 30, 1969, the Plaintiffs, Intervenor, and Defendant applied to the Court for preliminary approval of a compromise of the class action, and following a hearing in which the proposed compromise was fully explained to the court, such preliminary approval was given. An order was entered directing that the Defendant pay over to a trust fund the sum of $800,000, that said trust be maintained pending a hearing on final approval of said proposed settlement, and that notice of such final hearing, in the form prescribed by the Court, be given to all members of the class.

11.

The stipulation of settlement filed in this Court on December 30, 1969, stated that if said settlement were not finally approved by this Court or if this case were not finally dismissed without payment by Defendant of any further sums, then the entire trust fund, together with accumulated interest, should be immediately refunded to Defendant without further order of the Court. The Trust Agreement also provided that the trust was created subject to the express condition and reservation on the part of the Defendant as grantor that the Agreement could be revoked in full if the proposed settlement was not finally approved by this Court or if this case was not finally dismissed without payment by the Defendant of any further sums.

12.

Also on December 30, 1969, and as a part of the overall settlement, Defendant and IARE entered into a Memorandum

ledge & Horn. New counsel were engaged by some plaintiffs, starting on or about April 4, 1970. These counsel, who are Chris Dixie, Esquire, of Houston, Texas, and Hardee, Ott & Hamilton, P.A., of Tampa, Florida, are referred to hereafter as Counsel for Movants.

of Agreement providing for the abolition of the craft or class of Locomotive Firemen and the availability of promotional opportunities for the members of said craft or class into operating positions of the Defendant under the then existing Uniform Working Agreement governing operating employees of Defendant. The Memorandum of Agreement further provided that it should take effect only upon final approval of this Court of the settlement reached in this case and provided that if said settlement was not finally approved, the Memorandum of Agreement would be null and void.

### 13.

On December 30, 1969, the Defendant did pay into the hands of the Trustees of the trust the sum of $800,000 and said was deposited by the Trustees at interest with the Florida National Bank of Jacksonville, Florida, as shown in the First Report of Trustees filed in this Court on January 8, 1970.

### 14.

On February 5 and 6, 1970, Notices of the Final Hearing, in the form ordered by this Court, were sent to all members of the class, as were statements from the Trustees showing for each member of the class his entitlement to share in the fund including the amounts payable to each such individual on the three pay-out dates of April 1, 1970, April 1, 1971, and April 1, 1972.

### 15.

The Notice of Final Hearing stated that an application was pending for approval of a compromise of this action under which the Defendant would pay into the trust fund sums in full settlement of any and all liability; stating that a hearing had been held on the preliminary advisability of the settlement and the Court had preliminarily approved the settlement and the sums had been paid into the trust fund; stating that a hearing on the final advisability of the settlement would be held before The Honorable Charles R. Scott at the United States Court House in Jacksonville, Florida, on the 11th day of March, 1970, at 10:00 a. m. at which time all interested parties may be heard; and further stating that

The original complaint in this action, a motion to amend that complaint, a motion for intervention, a motion to allow maintenance as a class action, orders granting said motions, and a full copy of the Stipulation of Settlement and amendment thereto, including a copy of the Trust Instrument establishing the 'F.E.C. Firemen's Trust Fund' and amendment thereto, and a copy of an Agreement between F.E.C. and IARE concerning abolition of the craft of Locomotive Firemen and eligibility for promotion of employees holding seniority as Locomotive Firemen as of the effective date of the Agreement to operating positions with F.E.C. are on file in the office of the Clerk of United States District Court for the Middle District of Florida in Jacksonville, Florida, and may be examined by you there.

### 16.

Between December 30, 1969, and March 11, 1970, various meetings were held by counsel for Plaintiffs with the various members of the class to explain to them the terms of the settlement. These meetings were held in Miami, Florida, on or about January 10, 1970, in New Smyrna Beach, Florida, on or about January 11, 1970, in Jacksonville, Florida, on or about January 11, 1970, in New Smyrna Beach on or about January 15, 1970, in Miami on or about March 7 or 8, 1970, and in New Smyrna Beach on or about March 10, 1970. In addition, there were phone calls and correspondence between various members of the class and counsel for Plaintiffs.

### 17.

On March 11, 1970, a hearing was held in this Court concerning the final advisability of the proposed settlement, pursuant to the earlier orders of this

Court and the terms of the notices sent to the members of the class. Present at that hearing, according to their affidavits, were the following Plaintiffs (now also Movants) who now seek to set aside the settlement: Henry Allen Crump, Arthur L. Davis, Walter J. Howard, Leandrus Jorden, Harold Marshall, Gordon Rogers, and, according to his statement in open court on June 29, 1970, also present was Moses Meeks. According to the affidavit of Gordon Rogers, there were more than 15 individual Plaintiffs who attended the hearing on March 11, 1970.

### 18.

At the hearing on March 11, 1970, three Plaintiffs (now also Movants), Walter J. Howard, Henry Allen Crump, and Leandrus Jorden, testified that they were dissatisfied with the amounts of money which they would individually receive under the proposed settlement. Each of them was informed by the Court that the Court could approve the settlement for all or for none, and each was asked whether he wished to have his complaint considered as one against the entire settlement and as a basis for possibly blocking the entire settlement. Each replied that he did not. No other Plaintiffs or present Movants who were present in the court room requested permission to speak, voiced objection to the settlement, or complained of any other matters now asserted by them as a basis for setting aside the settlement.

### 19.

No Plaintiff or Movant at any time prior to the filing of the present Motion on May 29, 1970, alleged to the Court that he had not given prior authorization to his attorneys, Milledge and Horn, to settle the case.

### 20.

No Plaintiff or Movant prior to May 29, 1970, alleged to the Court in any manner that he did not understand the terms of the settlement, or was unaware of the existence of the Memorandum of Agreement between IARE and FEC, or that he had not had an opportunity to examine the documents on file with the Court, or that his attorneys had failed adequately to explain the terms of the settlement to him, or that he did not know that IARE had intervened, or that he did not know that his attorneys also represented IARE, or that he objected to such representation.

### 21.

Of the more than 200 members of the class, including 126 members who would share in varying amounts in the proceeds of the settlement, only the three individuals named above voiced any objection to the settlement either by written communication to the Court or by oral testimony on or before March 11, 1970.

### 22.

On March 31, 1970, checks were mailed by the Trustees to each of the members of the class who shared in the proceeds of the settlement [2] according to the time table for payments set forth under the terms of the settlement. The mailing of these checks, and the withholding by attorneys Milledge and Horn of their attorneys' fees awarded them by the Court, amounted to a total of nearly $300,000 paid out of the fund in settlement.

### 23.

Of the 24 individual Plaintiffs who are now listed in the Notice of Appeal in this case and/or in the present Motion for Relief from Judgment as being represented by Chris and Dixie, Esquire, and Hardee, Ott and Hamilton,[3] and as

---

2. The only exception was where the original class member was deceased and no duly appointed legal representative of his estate was available to accept the payment.

3. Apparently in early April, 1970, and at various times thereafter, a number of the class members originally represented by Milledge and Horn discharged them and engaged the services of Chris Dixie,

being opposed now to the settlement and as now seeking to set same aside, the following actions took place in regard to the April 1 pay-out:

a) Eddie J. Byrd received no check as according to the records of the Trustees, he did not hold fireman seniority with FEC as of January 21, 1963, or thereafter, and was therefore not entitled to share in the settlement.

b) Douglas Oliver, a Plaintiff, was deceased and his widow had not procured certified letters of administrations or of administration unnecessary, and in accordance with advice from this Court to the Trustees no funds were paid to his heirs or estate until such letters of administration or of administration unnecessary were procured.

c) Walter J. Howard and Moses Meeks received checks, but have not cashed same nor have they unconditionally tendered same back to the Trustees, to FEC, or to the Court.

d) Willie E. Jordan, James F. Fennel and Johnny Thomas cashed their checks on April 2, 1970.

e) Leandrus Jorden and J. Y. Jackson cashed their checks on April 3, 1970.

f) H. A. Crump, Gordon Rogers, James L. Sims, John C. Peoples and Arzy Rogers cashed their checks on April 6, 1970.

g) Willie J. Alderman and Harvey Williams cashed their checks on April 7, 1970.

h) O. C. Carter, Jr. and Mose Reese cashed their checks on April 8, 1970.

i) Arthur L. Davis and Chanel N. Mitchell cashed their checks on April 13, 1970.

j) Harold A. Marshall cashed his check on April 21, 1970.

k) Robert W. Wilson cashed his check on May 25, 1970.

### 24.

Arzy Rogers, according to his affidavit, after learning of the settlement agreement, requested and received from the Defendant permission to take a physical examination for employment and was notified that he had not passed said physical. At his request, he was given permission to see a neutral doctor, which was required by the Memorandum of Agreement between IARE and FEC, but refused to follow that procedure because of his understanding that this was pursuant to the terms of a contract or mediation agreement which had been thrown out in an earlier case.

### 25.

To date, the only offer to return any money paid out made by any of the members of the group now seeking to set aside the judgment is contained in paragraph 13 of the present motion for relief from judgment which reads in its' entirety "Plaintiffs state that, in the event this Court should set aside the Judgment of March 11, approving the settlement, all Plaintiffs represented by undersigned counsel stand ready and able to return to the Court those funds already received by them pursuant to the settlement terms." No actual tender of monies has been made up to the present time to the Trustees, the Defendant, or the Court of said funds nor has any offer of any type been made to return to the Trustees, the Defendant, or the Court, the entire sum of almost $300,000 paid out on April 1, 1970.

### 26.

The first attempt that any of the Plaintiffs made to set aside the Judgment was apparently a letter of April 4, 1970, to Chris Dixie, Esquire, of Houston, Texas. This letter stated that the signing Plaintiffs were dissatisfied with the outcome of the Court proceedings on March 11, 1970, and asked that Mr. Dixie represent them in their "quest for proper relief for illegal acts against us that were perpetrated against us by the Florida East Coast Railway Company,

Esquire, of Houston, Texas, and also Hardee, Ott & Hamilton, P.A., of Tampa, Florida. At the hearing on June 29, it was stated that a total of 26 such individuals were then represented by those new counsel. See footnote 1, *supra.*

Inc., a Florida corporation." This letter was signed by W. J. Howard, Moses Meeks, Arzy Rogers, Gordon Rogers, James L. Sims, Arthur L. Davis, Leandrus Jorden, Chanel N. Mitchell, W. J. Alderman, W. E. Jordan, H. A. Crump, R. W. Wilson, J. T. or J. I. Thomas of 518 Washington Street, James Fennel, and Harvey Williams. Also, there apparently was a telephone call to Percy Foreman, Esquire, who referred the Plaintiffs to Chris Dixie, Esquire, but the time of this phone call was not established.

27.

On April 10, 1970, a Notice of Appeal was filed with the clerk of this Court in Tampa, Florida, on behalf of Walter J. Howard, Leandrus Jorden, Arthur L. Davis, Willie E. Jordan, Gordon Rogers, Moses Meeks, James L. Sims, and H. A. Crump.

28.

Approximately two weeks after the Notice of Appeal was filed, representatives of Hardee, Ott and Hamilton first met with some of the Plaintiffs who are now seeking to set aside this settlement. Not until approximately one week before the present Motion was filed under Rule 60(b) did a representative of Hardee, Ott and Hamilton, Mr. Capelle, examine the file in this case in this Court.

29.

On June 1, 1970, the present motion for relief from judgment was filed in this Court on behalf of the Plaintiffs who filed the Notice of Appeal, and also alleging that the following Plaintiffs had discharged Milledge and Horn and had retained Hardee, Ott and Hamilton to prosecute the Appeal and all matters related thereto: Willie J. Alderman, O. C. Carter, Jr., Eddie J. Byrd, James F. Fennel, J. Y. Jackson, Harold A. Marshall, Chanel N. Mitchell, D. Oliver, John C. Peoples, Mose Reese, Arzy Rogers, Johnny Thomas, Harvey Williams, and Robert W. Wilson.

30.

At the hearing of the present Motion on June 29, 1970, Counsel for the Plaintiffs presently seeking relief from the judgment stated that their motion was based on Rule 60(b) (2) and (b) (6), Federal Rules of Civil Procedure. Counsel also stated that the class suit determination by this Court, made December 30, 1969, appeared to be authorized by the earlier opinion of the Court of Appeals for the Fifth Circuit in this case.

31.

The lack of prior authorization of attorneys Milledge and Horn to settle this case and the matters concerning an alleged failure by Milledge and Horn to adequately explain the terms of settlement were matters within the actual knowledge of the Movants on or before March 11, 1970. By the notice of final hearing, Movants had actual knowledge that a class suit was pending, that a memorandum of agreement between I.A.R.E. and F.E.C. which abolished the class had been signed, and that a settlement was pending final approval, and that someone had intervened in the lawsuit. The Movants had constructive knowledge, binding upon them, of all matters of which they now complain which they could have learned by examining the files of this Court in this case on or before March 11, 1970, as the notice of final hearing specifically stated that all such papers could be examined, and told the Movants where they could be examined, and no evidence has been forthcoming to show that any attempt to examine such papers was made.

CONCLUSIONS OF LAW

1. This Court has jurisdiction of this case and of the parties under 45 U.S.C. §§ 151–188, 28 U.S.C. § 1337 and under 28 U.S.C. § 1331.

2. This Court has jurisdiction to entertain and deny this motion under Rule 60(b) even after an appeal has been taken. Ferrell v. Trailmobile, Inc.,

223 F.2d 697 (5 Cir., 1955); 7 Moore's Federal Practice, paragraph 60.30(2) and cases there cited.

 3. The allegations of the 75 individual plaintiffs who were original parties to this suit show clearly that all the 75 individual counts were based on a common set of facts concerning alleged common positions taken toward the entire class by the defendant. The claims of the representative plaintiffs were apparently typical of the claims of the entire class. The plaintiffs, who had already established through an appeal that their claims stated a cause of action and were within the jurisdiction of this Court, obviously were fairly and adequately protecting the interest of the entire class. The class was so numerous that joinder of all members thereof was impractical, there being over 200 employees who held seniority as locomotive firemen as of February 23, 1963. There were obvious common questions of law and fact concerning the rights of the class to damages and to other appropriate relief for alleged violations of the Railway Labor Act. Defendant allegedly had acted and refused to act on grounds allegedly applicable to the class. As the Court of Appeals held, it was open to this Court to determine whether injunctive relief was appropriate upon full hearing with respect to the class as a whole. The possibility of such relief being granted appeared highly likely if the allegations of the plaintiffs could be established. It was strongly probable, almost inevitable, that adjudications as to the 75 individual plaintiffs would, as a practical matter, be dispositive of the interests of all the other members of the class or craft of locomotive firemen and might interfere with or impede the ability of those nonparty craft or class members to protect their interests. Furthermore, there was the risk of inconsistent or varying adjudications with respect to the rights of individual members of the craft or class in regard to back pay, reinstatement, etc. The possibility of incompatible standards being imposed upon the defendant did exist.

As the Court of Appeals recognized in its opinion in this case, this claim was "even more so, a claim on behalf of the entire craft whether represented or not." Mungin v. Florida East Coast Railway Co., *supra,* at 1178. In these circumstances, the class action could be maintained under Rule 23(b) (1) and (2) of the Federal Rules of Civil Procedure as this Court found. The weight of authority supports the propriety of this determination. Mungin v. FEC, *supra,* at 1175, 1177–1178; Jenkins v. United Gas Corporation, 400 F.2d 28 (5 Cir., 1968); Clemens v. Central Railroad Company of New Jersey, 264 F.Supp. 551 (E.D.Pa.1967). Further, as a practical matter, since the determinations of the rights of the 75 individual plaintiffs would almost surely establish the rights of the other class members and there possibly would be involved considerations of how to restore the *status quo ante,* assuming the plaintiffs proved their case, the Court was faced with the requirement that relief for the entire class and restoration of that *status quo ante,* if appropriate, could not be limited in its operative effect to just the 75 plaintiffs and neither could the relief be so limited as to expressly or impliedly authorize continued unlawful treatment of the rest of the class besides the 75 individual plaintiffs. In this situation, a class action was the only appropriate vehicle under which the Court could proceed. *Cf.* Potts v. Flax, 313 F.2d 284 (5 Cir., 1963). It may be argued that the class action in this case could have been maintained under Rule 23(b) (3) and that may be so. However, as noted above, this suit was clearly maintainable under other sections of the rule. When such options are available, the Court should treat the action as one under Rule 23(b) (1) or (b) (2) instead of under (b) (3) in order to achieve the purposes of the Rule which are to avoid a multiplicity of suits, provide common binding adjudication, and prevent inconsistent or varying adjudications. Van Gemert v. Boeing Company, 259 F.Supp. 125 (S.D.N.Y.1966); 3B Moore's Feder-

al Practice, paragraph 23.31(3). I conclude that the class action determination previously made herein on December 30, 1969, was proper.

■■ 4. I further find that I.A.R. E., as the duly certified statutory bargaining representative of the craft or class of locomotive firemen of F.E.C. was entitled to intervene in this case as a matter of right as I have heretofore determined in my Order of December 30, 1969, allowing such intervention. I.A. R.E. sought in its intervention the same relief for the same alleged violations as had the original plaintiffs. Neither from the entire evidence before me on December 30, 1969, or March 11, 1970, did any "vigorous controversy" or "dual voices", see Mungin v. Florida East Coast Ry. Co., *supra*, 416 F.2d at 1178, fn. 34, appear and no reason was apparent to this Court, then or now, for imposing any restriction upon I.A.R.E. intervention. Neither did any conflict of interest on the part of Milledge & Horn exist in the mind of the Court where they represented two parties both of whom sought the same end and one of whom, I.A.R.E., was under a statutory duty of fair representation. The fact that some 26 of over 200 members of the craft or class now object apparently to what I.A.R.E. did by signing the Memorandum of Agreement with F.E.C. raises no substantial doubts in the mind of the Court as to the fairness of I.A.R.E. representation. Benefit flowed both ways in that agreement which dealt with a matter long festering in the railroad world, the use of firemen on diesel locomotives, which has been the object of extensive bargaining and Congressionally imposed arbitration, see Florida East Coast Ry. Co. v. Brotherhood of R. Trainmen, 336 F.2d 172, at 175–177 (5 Cir. 1964), cert. den. 379 U.S. 990, 85 S. Ct. 703, 13 L.Ed.2d 611 (1965) and Public Law 88–108, 77 Stat. 132, and is currently again under consideration by a Presidential Emergency Board convened under Section 10 of the Railway Labor Act, see 74 Labor Relations Reporter 261–262 (July 13, 1970). In this histor-

ical context and the circumstances and facts of this case, it appears on this record that I.A.R.E. has only exercised its recognized discretion in bargaining for all whom it represents, making such compromises as to it appeared to be in the best interests of all. The complete satisfaction of every member of the craft or class is scarcely to be expected, especially on such an issue as this one. To date nearly 90% of those represented have not objected to what was done, a fact which goes far to show that what was done was reasonable and proper. See Ford Motor Co. v. Huffman, 345 U. S. 330, at 337–338, 73 S.Ct. 681, at 686, 97 L.Ed. 1048 (1953); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, at 349–350, 84 S.Ct. 363, at 371–372, 11 L.Ed.2d 370, at 381–382 (1964); Mungin v. Florida East Coast Ry. Co., *supra*, 416 F.2d at 1178. The present Movants have also pointed to this Court's decision in Harrison v. Florida East Coast Ry. Co., No. 65–366–Civ–J, decision entered August 8, 1967, as showing that I.A.R.E. was so derelict in its statutory duties that some restriction should have been imposed on it or that representation of I.A.R.E. by Milledge & Horn was improper. That case did not involve any finding of any breach of statutory duties of fair representation nor did it basically involve any breach of duty in negotiating a collective agreement having prospective application. The Court therein found that I. A.R.E. waived, without express consent, individual accrued claims of its members and that, since the contract was entire, certain settlements of outstanding Section 6 notices (which I.A.R.E. had apparent authority to negotiate and which merely went to withdrawal or postponement of those notices) which were part of the total contract had to fall with the entire contract. The contract did not concern abolition of the craft, nor did it fail because of any breach of statutory duties, but solely because of the lack of individual authorizations which the Court thought were required under the

holding in Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), aff'd on rehearing, 327 U. S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). No showing of I.A.R.E. bad faith was made in that case, but apparently I.A.R.E. acted in good faith, albeit without proper authorization. I conclude that nothing connected with the I. A.R.E. intervention, the conditions of that intervention, or I.A.R.E. representation by Milledge & Horn is a sufficient basis for granting the present motion.

5. An attorney "has authority to determine what proceedings he will institute" and "has the exclusive management and control of the action and of all steps and proceedings taken therein to enforce the rights and remedies of his client." He controls the procedures in the case and can do whatever he feels necessary or proper in his client's behalf at least so long as his acts affect the remedy only and not the cause of action. 7 Am.Jur.2d "Attorneys at Law", §§ 118, 120. I conclude that Milledge & Horn properly acted within the scope of their authority as attorneys of record in amending the plaintiff's complaint to state a class action, in not opposing the intervention of I.A.R.E., and in moving the Court for a class action determination on December 30, 1969, and that these acts are not grounds for granting relief from the judgment.

6. This Court having determined that this case was properly maintainable as a class action under Rule 23(b) (1) and (b) (2) of the Federal Rules of Civil Procedure, the only notice to the class thereafter required was one of any proposed dismissal or compromise. Such notice must be given to all members of the class in such manner as the Court directs under Rule 23(e). All members of a class are bound by judgment where the action is maintained under Rule 23(b) (1) or (b) (2). Other notices are in the discretion of the Court under Rule 23(d). Only if the action is maintained under Rule 23(b) (3), which is not the case here, is there any requirement that the class members be given notice of a right to request exclusion from the class or the right to enter an appearance individually through their own counsel. Since the class action was properly maintained under Rule 23(b) (1) and (b) (2), no member of the class had any right to withdraw from the class. Therefore, there was no requirement nor authority for this Court to notify any members of the class that they had such an option to withdraw or be bound by any judgment. Neither was the Court of the opinion that there was any necessity to inform the members of the class that they could be separately represented by other counsel than Milledge & Horn, or of any specific right to object to the settlement. Prior to the March 11th hearing, the Court received only two letters from individual members of the class, both of which concerned themselves primarily with a complaint that these individual members were not receiving enough money and that they opposed a class action, rather than individual lawsuits and individual treatment of each member of the class. Presumably, these men knew how to find other lawyers when they wanted to, as they were able to do so after March 11th. They were not illiterates or juveniles, but those who complained at the March 11th hearing were all mature men with long working experience who were all high school graduates. Their letters and their testimony make clear the level of their intelligence and the basis of their objections gave the Court no reason to believe that it had any duty to inform them of any right to hire other lawyers to represent them. Thus, any failure to notify the class members of a nonexistent right to "opt out" or of a right to be represented separately cannot be a basis for any relief from the judgment in the circumstances of this case, and I so conclude.

7. The hearing of December 30, 1969, concerned itself, so far as dismissal or compromise was concerned, solely with a *preliminary* approval of the

compromise so that monies could be paid into the Trust Fund by defendant prior to December 31, 1969, under Order of this Court, and so that a time might be set for a final hearing on this matter, with appropriate notice to all members of the class in order to enable them to come forward with any objections to the proposed settlement. No part of the settlement was finally approved or given final effect as a result of the December 30th hearing. Rather the settlement agreement itself, the Trust Fund created under it, and the Memorandum of Agreement between I.A.R.E. and F.E.C. were all expressly conditioned upon final approval of the settlement and dismissal of the case without the payment of further sums by the defendant. Had the settlement not been finally approved, none of these agreements would have been effective, but by their express terms would have been revoked and rendered null and void. Thus, the December 30th hearing was solely interlocutory in nature, looking toward a later hearing at which the Court could decide, on the basis of all the evidence then before it, whether the settlement should or should not be finally approved. No notice was required under the Federal Rules for such an interlocutory hearing nor the entry of such interlocutory orders as occurred on December 30, 1969. *Cf.* Cunningham v. English, 106 U.S. App.D.C. 92, 269 F.2d 539 (1959), cert. den. 361 U.S. 905, 950, 80 S.Ct. 400, 4 L. Ed.2d 383 (1959). I conclude that the failure to give notice of the December 30th hearing to the members of the class is not a basis for relief from the judgment.

■■■ 8. The members of the class were formally apprised of the March 11th hearing at least 30 days prior thereto by the notices, in the form prescribed by the Court, which were mailed by the Trustees, Milledge & Horn, on February 4 and 5, 1970, to all members

of the class.[1] The notice prescribed by the Court clearly stated that only preliminary approval had been entered, that final approval was still an open question, and that anyone who wished to be heard on March 11th would be heard. It further informed the members of the class that an amendment making the suit a class action had been allowed, that a motion to maintain the suit as a class action had been granted, that a proposed settlement agreement had been written and signed, that a trust fund had been created, that there had been an intervention in the suit, and that a contract concerning abolition of the craft or class of firemen and promotional opportunities for members of that class had been entered into between I.A.R.E. and F.E.C., and that all of these matters were involved in the final approval. It also informed all members of the class where these documents were and that they could be examined. At the time the Court ordered the giving of notice, there was no evidence before the Court of any type of dissension among the class nor of any lack of cohesiveness or unity in the class nor any evidence to indicate that the representation of the class was ineffective. At no time prior to the hearing on March 11th, except for the letters from Mr. Crump and Mr. Howard, was any disagreement with the proposed settlement brought to the attention of the Court by any member of the class, nor was any communication addressed to the Court requesting advice as to the rights of any member of the class to oppose the settlement or to be represented separately through different counsel. The Court finds that both the timing and content of the notice of final hearing was sufficient to apprise all members of the class of the matters involved in the March 11th hearing, and to put them on actual, or at the very least, binding constructive notice of such matters and complied with Rule 23. Any

---

1. Also, of course, many members of the class, as shown by the affidavits submitted in support of the present motion, received actual notice of the proposed settlement

through the meetings held by Milledge and Horn in Miami, New Smyrna Beach and Jacksonville in mid-January and early March, 1970.

failure thereafter by them to make further investigation cannot be any basis for relief from the judgment.

9. It is a requirement under Rule 60(b) that any motion seeking relief thereunder "shall be made within a reasonable time." The Rule postulates a maximum one-year time when relief is sought under Subsections (b) (1), (2) and (3). The movants here purport to rely on Subsections (b) (2) and (6), that is, respectively, "newly discovered evidence which, by due diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; and "any other reason justifying relief from the operation of the judgment." The Court finds that, in the circumstances of this case, such motions were not made "within a reasonable time." The factors that underlie this conclusion are that (1) nothing that was done on December 30, 1969, was in any sense final, but rather all that was done could be undone and all that was done was predicated upon final approval of the settlement to be made at a later time following notice to all members of the class; (2) most members of the class had notice through reading newspaper accounts in early January, 1970, and through meetings with their attorneys, Milledge & Horn, between the middle of January and the middle of March, 1970, that a settlement was pending and that a further hearing concerning the final approval of that settlement would be held; (3) all members of the class received formal notice, in the form prescribed by the Court, which informed them of the various proceedings on December 30th, the hearing on March 11th, the subject of that hearing which was final approval of the settlement; the fact that there would be a first payout on April 1, 1970, if final approval was forthcoming; the fact that a collective bargaining agreement concerning abolition of their craft and their promotional opportunities to other operating positions existed; the fact that all the interested parties could be heard on March 11th; and the fact that any and all documents concerning these matters were on file with this Court and could be examined by them; (4) the notices from the trustees concerning shares of the individual members of the class clearly showed to each member the crucial April 1, 1970, first payout date and all members of the class were aware of the crucial date; (5) no individual plaintiff in any way asserted to the Court prior to the March 11th hearing or at that hearing that their attorneys, Milledge & Horn, did not have authority to enter into this settlement, or that they disapproved in any manner Milledge & Horn's actions with regard thereto, or that they had been misinformed or not fully informed by Milledge & Horn in regard thereto except as to the extent noted above of the three plaintiffs who testified that they individually were dissatisfied with their share and felt that their individual cases merited separate consideration, although they did not wish to block the entire settlement for the entire class; (6) all members of the class, including the present movants, were aware through the trustees' notice to them in early February that there would be a payout on April 1, 1970, of approximately one-third of the sum paid in the settlement, but no action was taken by any individual plaintiff before this Court in any way to impugn the settlement or object to it or object to the Court's approval until the filing of the notice of appeal on April 10th; (7) of the eight individuals who joined in the notice of appeal, five had already cashed their April 1st checks at the time the notice of appeal was filed (H. A. Crump, Willie Jordan, Leandrus Jorden, Gordon Rogers and James L. Sims); (8) Arthur L. Davis, who was on the notice of appeal, cashed his check three days after the notice of appeal was filed; (9) Moses Meeks, although he did not cash his check, was present at the hearing on March 11th, and voiced no objection to the settlement, and did not make any objection to any actions taken by Milledge & Horn; (10) Walter J. Howard, although he has not cashed his check, was present at the

hearing on March 11th and only testified to the extent shown above; (11) of the fourteen other individuals listed in the present motion, twelve of them cashed their checks prior to this motion being filed, even though, of these twelve, seven had joined in the April 4th letter to Chris Dixie, Esquire, together with the eight who were listed in the notice of appeal (12) and of this group nine cashed their checks before the notice of appeal was filed; and (13) all evidence now relied upon was within the actual or constructive knowledge of the present movants before March 11, 1970. The failure by these individuals to exercise their opportunity to bring to the attention of the Court objections they now urge to the settlement, or to apprise the Court of their disapproval of its final approval of the settlement prior to the April 1st payout, resulted in the payment of nearly $300,000 to various members of the class and to Milledge & Horn, pursuant to the terms of the settlement of which these present movants were well aware. Further they have, in substantial part, accepted the fruits of the settlement which they now seek to set aside. That they have remained silent or cashed their checks because of pressing individual needs does not excuse their failure to act in an earlier time. In the circumstances of this case, their failure to file their motion until May 29th, when coupled with their earlier silence, their limited objections, their acceptance of the fruits of the settlement, and their failure to repudiate the acts of their attorneys of record, make the timing of the present motion unreasonable. There has been no convincing explanation of the delay by these movants, but on the contrary, the explanations furnished are totally inadequate. This record shows only inaction, neglect, and dilatoriness on the part of the movants. Too much has happened, with full knowledge of these movants and without objection on their part, for them now to claim that their motion comes within a reasonable time. Where a party, through his silence or inaction, and with knowledge of the facts, or with such knowledge available to him and not used, allows intervening events to occur pursuant to the judgment which radically alter the position of the parties, and no convincing explanation of his delay in raising his objections is forthcoming, the motion under Rule 60(b) is not timely and I so find that this motion comes too late. Goldfine v. United States, 326 F.2d 456 (1 Cir. 1964); Di Vito v. Fidelity and Deposit Co. of Maryland, 361 F.2d 936 (7 Cir. 1966); Federal Enterprises v. Frank Allbritten Motors, Inc., 16 F.R.D. 109 (W.D.Mo.1954); McCullough v. Walker Livestock, Inc., 220 F.Supp. 790 (W.D.Ark.1963); United States v. West Willow Apartments, Inc., 245 F.Supp. 755 (E.D.Mich.1965).

10. The movants have not offered to restore the *status quo ante* the April 1st payout nor has there been any proof forthcoming that they are able to do so. An offer to restore the entire *status quo ante* is, the Court concludes, required in the circumstances of this case to meet the terms which the Court is of the opinion would be just for relief. F.R.C.P., Rule 60(b); Willard C. Beach Air Brush Co. v. General Motors Corp., 88 F.Supp. 849, at 852 (D.N. J.1950), rev'd on other grounds, 184 F. 2d 569 (3 Cir. 1950). The limited allegation of the present movants that they can restore what they alone received, if their motion is granted, is not sufficient in the opinion of this Court.

11. I further find as a matter of law that where a party accepts the benefits of a settlement or compromise of his case, and he knows, or in the exercise of due diligence, should have known all the facts concerning that settlement, as is the case here, he ratifies that settlement by the acceptance of those benefits, whether the settlement in the first instance was unauthorized by him or not, and he is thereafter estopped to attack the settlement and the judgment entered thereon. Those movants who cashed their checks thus ratified the settlement. White Bird v. Eagle-Picher Co., 258 F.Supp. 308 (N.D.

Okl.1966); Robb v. Vos, 155 U.S. 13, 15 S.Ct. 4, 39 L.Ed. 52 (1894); Maryland Casualty Co. v. Beebe, 54 F.2d 743, at 746 (10 Cir. 1931); Cissell v. Great A & P Tea Co., 37 F.Supp. 913 (W.D.Ky. 1941); Yarnall v. Yorkshire Worsted Mills, 370 Pa. 93, 87 A.2d 192, 30 A.L.R. 2d 939 (1952); Yahola Sand & Gravel Co. v. Marx, 358 P.2d 366 (Okl.S.Ct. 1960); Patterson v. Southern Railway Co., 41 Ga.App. 94, 151 S.E. 818 (1930); Johnson v. Star Piano Co., 27 Ga.App. 425, 108 S.E. 811 (1921); Tudryck v. Mutch, 320 Mich. 99, 30 N.W.2d 518 (1948), cert. den. 334 U.S. 819, 68 S.Ct. 1083, 92 L.Ed. 1749; Foxworth v. Murchison National Bank, 136 S.C. 458, 134 S.E. 428 (1926); Condor Petroleum Co. v. Greene, 164 S.W.2d 713 (Tex.Ct.App. 1942).

12. Further as to Mr. Eddie J. Byrd and the heirs of Mr. D. Oliver, it is also well settled that failure to protest a settlement within a reasonable time, where allegedly the settlement was entered by the attorney without authority, works a ratification of the settlement since it is a client's duty, having actual or constructive knowledge of the settlement and its terms, to express his disapproval within a reasonable time. The same considerations as underlie the finding that the motion was not made within a reasonable time also render this failure to protest unreasonable as to time, as it was not until filing of this motion that they in any way challenged before this or any other court the settlement of the suit. As to the heirs of Mr. Oliver, they did not even take the steps recommended by the Court, as conveyed to them by Milledge & Horn, to put themselves in a legal position to accept their share of the funds. As to Mr. Byrd, also it appears that he is not entitled to share in the settlement in any respect as he did not come within the class of persons holding Firemen seniority. The assertions of Allen Milledge, Esquire, in his affidavit to this effect have gone unchallenged. The failure by these persons to challenge the settlement has resulted, as noted above, in the payout of

nearly $300,000 prior to any challenge of any type being made. Under these circumstances, I hold that by their silence, with knowledge, whether it be characterized as actual or constructive, they ratified. See Hot Springs Coal Co. v. Miller, 107 F.2d 677 (10 Cir. 1939); Powell v. Penna. Railroad Co., 166 F.Supp. 448 (E.D.Pa.1958), rev'd on other grounds 267 F.2d 241 (3 Cir. 1959); Beirne v. Fitch Sanitarium, Inc., 167 F.Supp. 652, at 654 (S.D.N.Y.1958); Yarnall v. Yorkshire Worsted Mills, supra; cf. Kincade v. Jeffery-De Witt Insulator Corp., 242 F.2d 328 (5 Cir. 1957).

13. In regard to Mr. Moses Meeks, who has not cashed his check, he was present at the hearing on March 11th and voiced absolutely no objection to any of the proceedings nor did he in any way attempt to call the attention of the Court to any protest that he might have. His silence worked ratification. Posko v. Climatic Control Corp., 198 Md. 578, 84 A.2d 906 (1951); Rackham v. Rackham, 119 Utah 593, 230 P.2d 566 (Utah S.Ct.1951); cf. Appeal of Simon, 255 F.2d 365 (3 Cir. 1958).

14. This leaves only Mr. Walter J. Howard among the present movants. He has not cashed his check. Mr. Howard wrote the Court a letter which was read at the hearing on March 11th, and he also took the stand and voiced his objection to the amount that he was to receive under the settlement. Mr. Howard was also allowed to read into the record at that hearing a further letter of March 10th to his attorneys, Milledge & Horn, setting forth the grounds on which he individually would be willing to settle his claim and asserting that his case was "single action, not class action" and that the amount given him and the relief afforded him was not sufficient. Then, following a recess during which Mr. Howard conferred with his attorneys, the following colloquy, in the presence of Mr. Howard, took place between Mr. Milledge and the Court:

Mr. Milledge: Mr. Crump and Mr. Howard both have asked me to ad-

vise the Court that neither of them desire to see the settlement set aside as to the other men; that each of them feels that their situation is a special situation. Today and on other occasions, I have advised them and others, that in our opinion, this is a class action and that the Court has no alternative but to approve it for all or for none.

The Court: And you are speaking as attorney of record for those two men?

Mr. Milledge: Yes, but they still wish to advise the Court that they would prefer to have their situation as to each of them treated separately. They ask the Court to be advised of that for the various reasons that they have expressed in the letters and * * *

The Court: Well, let me ask you this, Mr. Alexander, (Counsel for Defendant) and that will bring it to a head. Are you willing to settle as to 73 and leave open the claims of two?

Mr. Alexander: No, sir.

The Court: That's what I suspected. Well, there is only one thing for the Court to do under the circumstances, and that is to go ahead with the settlement as to all 75. Now, come up if you have any further objections, Mr. Howard or Mr. Crump, and let me hear from you. Who is the man stood up?

The Clerk: They are both sitting here at the table, Your Honor.

The Court: Excuse me, I didn't see them there. There was somebody in the audience that wanted to say something. Come up front and give your name.

Mr. Howard conveyed no further communications to the Court at all during the hearing on March 11th. At no time did he repudiate his representation by Milledge & Horn. At no time did he advise the Court that Milledge & Horn were not authorized to act on his behalf or to express his position although, of course, he was complaining of the inadequacy of the settlement as to him individually and was seeking to escape inclusion in the class. Further, Mr. Howard, although he had knowledge that payments would be made to all members of the class sharing in the settlement on April 1, 1970, took no further action prior to that time to bring to the attention of the Court any matters now asserted in his motion made on his behalf, concerning the lack of authority of Milledge & Horn, his failure to understand the settlement, or any other matters. It does not appear to this Court that the mere statement by Mr. Howard in the hearing on March 11th that he was to some degree dissatisfied with the settlement as it applied to him, but without directly repudiating the authority of Milledge & Horn to speak as his attorneys of record and with no attempt being made to discharge them before the settlement was finally approved or the payments were made upon April 1st, is simply not a sufficient repudiation of either the authority of Milledge & Horn or the terms of the settlement. For a similar case so holding, see Poenisch v. Quarnstrom, 361 S.W.2d 367 (Tex.S.Ct. 1962). Nothing that is now alleged to support upsetting or overturning this judgment can in any way be characterized as "newly-discovered evidence" as far as Mr. Howard was concerned. He either knew all that he now complains of, or had constructive knowledge thereof. Evidence available in the files of this Court, to which Mr. Howard was specifically referred, cannot be changed into "newly-discovered" because he had not bothered to look at these files. Failure to know what could have been known in the exercise of due diligence amounts to knowledge in the eyes of the law. I find that Mr. Howard, under these circumstances, is too late in attacking this judgment.

15. The movants now assert apparently that the settlement was too small and that this is a basis for relief from the judgment. I do not so find.

First of all, no trial had been had nor even any answer filed. The complaint had not begun to be proved, although it was held to allege a claim. Proof might have failed entirely. Indeed, steps had been taken to petition for certiorari in this case and that may have resulted in a change of things. Second, it does not appear likely that the punitive damages sought were recoverable as back pay is only to restore, not to penalize. United Industrial Workers, etc. v. Board of Trustees of Galveston Wharves, 400 F. 2d 320, at 325 (5 Cir. 1968), cert. den. 395 U.S. 905, 89 S.Ct. 1747, 23 L.Ed.2d 219; cf. Trinity Valley Iron & Steel Co. v. NLRB, 410 F.2d 1161, at 1167–1168 (5 Cir. 1969). Third, the Trustees Report of February 23, 1970, shows on the computer printout a total annual pre-strike firemen payroll of approximately $758,000. This times the seven-year period of 1963 through 1969 gives a maximum back pay liability of about $5,-306,000. But there was a strike, as a result of which there were picket lines which these plaintiffs may have refused to cross in 1963 and 1964, or even, perhaps, later.[2] These could have reduced liability. See Raabe v. Florida East Coast Ry. Co., 259 F.Supp. 351 (M.D. Fla.1966). Counsel for F.E.C. stated without challenge that there were interim earnings from F.E.C. and its trucking subsidiary alone of approximately $1,250,000, to say nothing of what was earned elsewhere by other employees.[3] Also asserted was the consideration that F.E.C. had reduced freight traffic during the strike and also had almost no passenger service, all of which substantially reduced the number of positions available for firemen. Counsel also stated that about 20 members of the craft retired after the strike started, three never held fireman seniority, and three died during the strike. The question whether some class members were legitimately found to be physically disabled for work as firemen was still open as part of the case. Further, as noted above, only three of the more than 200 class members objected to the size of the settlement in any respect. The attorneys for both sides endorsed the settlement. I find in this record simply no substantial indication that the settlement was inadequate or that it was arrived at in any fashion other than in good-faith, arms-length negotiations between the adversaries.

16. None of the grounds urged by movants and discussed above are in my opinion the type of extraordinary grounds upon which a court can properly grant relief pursuant to Rule 60(b) (6) and I find relief is not justified under that part of Rule 60 for the reasons more fully set forth above concerning these items, whether they be viewed individually or cumulatively.

17. This Court concludes that any evidence now asserted by Movants as a basis for relief was all evidence which was actually known to Movants on or before March 11, 1970, or of which Movants had binding constructive knowledge through a notice from this Court and which by the exercise of due diligence, they could have discovered on or before March 11, 1970. I therefore conclude that no evidence upon which Movants now rely is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Any failure to produce such evidence on or before March 11, 1970, or to direct the Court's attention thereto was due solely by the Movants' lack of due diligence. I conclude that the Movants are not entitled to relief, in these circumstances, under Rule 60(b) (2).

18. Any finding of fact entered herein which may be construed in whole or in part as a conclusion of law, or any conclusion of law entered herein which may be construed in whole or in part as

---

2. Employee Crump testified about picket line violence and never said he would have worked.

3. Employees Crump and Jorden both testified they had interim employment elsewhere.

a finding of fact, shall be so deemed and treated as if properly set forth herein.

19. The motion for relief from judgment, filed herein on May 29, 1970, after hearing and argument thereon and the consideration of the entire record including briefs is hereby denied.