Edward **CRESSWELL, et al., Plaintiffs,**

v.

**SULLIVAN & CROMWELL and Prudential-Bache Securities, Inc., Defendants.**

**No. 87 Civ. 2685 (RWS).**

United States District Court, S.D. New York.

July 31, 1987.

---

Cooper, Brown & Behrle, P.C., New York City, for plaintiffs; Richard B. Cooper, of counsel.

Sullivan & Cromwell, New York City, pro se; Michael A. Cooper, Garrard R. Beeney, Pressly M. Millen, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Prudential-Bache; Sanford M. Litvack, Charles Chasin, of counsel.

## OPINION

SWEET, District Judge.

In this action for fraud and negligent misrepresentation, defendants Sullivan & Cromwell and Prudential-Bache Securities, Inc. have moved for an order pursuant to Rule 12(b)(6), Fed.R.Civ.P., dismissing the amended complaint on the ground that it fails to state a claim upon which relief can be granted. For the reasons discussed below, the motion to dismiss is denied.

## Prior Proceedings

In March 1983, a group of plaintiffs, represented by Edward J. Swan, Esq., commenced in this court an action entitled *Cresswell, et. al. v. Prudential-Bache Securities, Inc.*, 83 Civ. 2099 (RWS). Later, in October 1984, a second set of plaintiffs, also represented by Swan, brought a separate action against Prudential-Bache, entitled *Wallin, et al. v. Prudential-Bache Securities Inc.*, 84 Civ. 7192 (RWS). Both suits charged Prudential-Bache with certain misrepresentations and omissions in connection with GNMA/T–Bonds Spread Transactions ("Spread Transactions").[1] Plaintiffs in these actions alleged that they had invested in the Spread Transactions and collectively lost $3,561,307.

On April 25, 1983, defendant Prudential-Bache, represented by Sullivan & Cromwell, moved to dismiss the amended complaint in the *Cresswell* case on various grounds, including failure to plead fraud with particularity and lack of subject matter jurisdiction. After the motion had been granted in part and denied in part, the parties embarked upon the normal pretrial discovery, including substantial document production and numerous depositions. In late 1984, when discovery was largely completed, the parties entered into settlement discussions.

In January 1985, plaintiffs in this action entered into agreements with Prudential-Bache which resolved all their claims for approximately $1,600,000. Following execution of those agreements, this court entered a judgment and order dismissing plaintiffs' claims with prejudice on February 1, 1985.

## The Amended Complaint

On April 20, 1987, fifty-six of the prior claimants filed this suit against Prudential-Bache and Sullivan & Cromwell. These plaintiffs now contend that during the pendency of the prior actions, Prudential-Bache and Sullivan & Cromwell intentionally withheld production of documents which purportedly fell within the ambit of a document request served in December 1983.

Specifically, plaintiffs' second request for production of documents in the *Cresswell* action sought documents relating to any investigation by any exchange relating to Prudential-Bache's marketing of the Spread Transactions. According to the amended complaint, a letter from the New York Stock Exchange to the General Counsel of Prudential-Bache, dated four days before the document request, was not produced.

Plaintiffs, asserting two causes of action which allegedly arise under state common law, seek to recover damages from Prudential-Bache and Sullivan & Cromwell based on the alleged failure to produce the documents referred to above. Plaintiffs' theory of the measure of damages is the difference between what they settled for in 1985 ($1,600,000) and what they now say they probably would have been able to achieve by way of settlement ($3,030,000) had they known about documents relating to an exchange investigation that were not produced. Plaintiffs demand a trial by jury, punitive damages and attorneys' fees.

## Applicability of Fed.R.Civ.P. 60(b)

■ The plaintiffs in this case are seeking damages for an alleged fraud committed upon them in the earlier actions, which they contend induced them to settle their claims for less than they otherwise would have been able to obtain. The issue raised on this motion is whether an action such as this is governed by Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) specifies the procedure for obtaining relief from a judgment when fraud or other misconduct has allegedly been committed in connection with obtaining the judgment. Under that Rule:

> [T]he court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.... The motion shall be made within a reasonable time,

---

**1.** A third group of plaintiffs presented their claims to Prudential-Bache through Swan, but were never parties to either action. They did, however, participate in the settlement.

and ... not more than one year after the judgment, order, or proceeding was entered or taken.... This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, ... or to set aside a judgment for fraud upon the court.

The Rule thus sets forth an express mechanism for a party seeking relief from a judgment. If plaintiffs' action fell under Rule 60, plaintiffs would essentially be suing for rescission and presumably would be required to tender back their part of the settlement to return to the status quo and possibly face preclusion from suing for damages. The plaintiffs here, however, are not seeking "relief" from a "judgment" within the terms of Rule 60(b). Instead, they seek to affirm the judgment of settlement, and sue for additional damages caused only by the fraud involving the failure to produce certain documents. Of course, in trying such a case, the merits of the prior actions will be relevant, but the issue will be different: whether the settlement value of the cases would have been higher absent the fraud, and if so, by how much.

Defendants contend that Rule 60(b) is the exclusive remedy for a party claiming to have been defrauded into agreeing to a settlement leading to entry of a judgment or final order in a federal lawsuit. In support of this proposition they cite two cases which, they contend, require the court to look through plaintiffs' characterization of the action as one arising under state law and see the action for what it is: an action attacking the validity of a judgment. Nevertheless, the cases cited by defendants in support of this proposition are distinguishable. In *Black v. Niagara Mohawk Power Corp.*, 641 F.Supp. 799 (N.D.N.Y.1986), plaintiff commenced a fraud action in state court against defendants, charging that they had obtained summary judgment in an earlier action by means of fraudulent statements in an affidavit submitted in support of their motion. After the action was removed to federal court, the court, in ruling upon plaintiff's motion

to remand and defendants' cross-motion for summary judgment, the court held:

> Black is necessarily relying upon federal law for the relief sought in his complaint despite his attempt to couch the complaint solely in terms of state law. His claim that the judgment in *Black I* was obtained by fraud clearly constitutes an attack on the validity of that judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. As such, the viability of the claim must be determined by reference to standards enumerated in cases decided under the rule. Accordingly, his claim involves a general federal question and was properly removed to this Court. *See* 7 Moore's Federal Practice ¶ 60.38[1], at 60–402 (1985).

*Id.* at 801–02 (footnotes omitted).

In *Black*, it was necessary to grant the plaintiff relief from the prior judgment, since the summary judgment entered against him would preclude any recovery on the prior claim. The new lawsuit brought by the plaintiff there could have established at best that his prior claims had merit, completely contrary to the summary judgment establishing that his claims had no merit. In contrast, this case involves a claim that does not depend on the merits of the prior actions, although the merits of the prior actions are certainly relevant to the claim. The claim is not that, had full disclosure been made, the plaintiffs would have prevailed. Instead, the claim is that, had full disclosure been made, the plaintiffs would have bargained for a greater settlement.

*Villarreal v. Brown Express, Inc.*, 529 F.2d 1219 (5th Cir.1976), although not controlling in this Circuit, is not so easily distinguishable on its facts. In *Villarreal*, plaintiff and others brought a personal injury action against Brown Express in federal court in connection with a truck accident. The action was settled for approximately $300,000, and the district court entered an order dismissing the case with prejudice. Seven days later, plaintiff sued Brown Express in Texas state court in conversion, alleging that the defendant had fraudulently concealed a tire on the vehicle

plaintiff was riding when the accident occurred. Plaintiff claimed that without this important piece of evidence he was forced to settle his earlier action for much less than he would have otherwise obtained, and asked for money damages for conversion. On appeal from the denial of a motion to remand the case to state court and the grant of summary judgment to the defendant, the Fifth Circuit affirmed, holding that Rule 60(b) applied and that removal was proper:

> Although appellant's complaint purports to seek damages for conversion of a tire, it is our opinion that the claim in this case is essentially one to recover additional damages for personal injuries, and can be viewed as an action which attacks the order of dismissal entered by the district court in the prior suit between these parties. The damages alleged by appellant are not based on the actual value of the tire, but on the alleged fraudulent concealment of the tire. In order to demonstrate any unique value that the tire might have, appellant would have to prove that a fraud was perpetrated upon him during the settlement negotiations in the prior law suit.
>
> The proper avenue of redress for a party seeking relief from a judgment claiming fraud as grounds for relief is under Fed. R.Civ.P. 60(b)(3).

*Id.* at 1221. The Court went on to dispose of the contention that plaintiff was not "attacking" the final order in the earlier federal action, but merely seeking to improve upon a settlement in which an independent actionable tort occurred.

In general terms, the *Villarreal* court seemed to adopt the rule that any action which depended on proof that a fraud was committed on the plaintiff during the prior settlement negotiations was properly an action seeking relief from a judgment under Rule 60(b). The plaintiff, however, did not assert the validity of the prior settlement and seek damages for fraudulent inducement of the settlement. There was, in the

court's view, no claim in the second suit that was not essentially the same claim for personal injuries as in the first suit. *Id.* at 1221; *cf. Wichita Falls & Southern Railroad Company v. Durham*, 132 Tex. 143, 120 S.W.2d 803 (1938) (stating that an action could not be brought after execution of a valid release "unless proof was made of damages separate and apart from his original case of negligence"). The plaintiff was asking $1,000,000 for the conversion of a tire, and $5,000,000 in punitive damages. In the present case, damages aside from the claims of fraud in the Spread Transactions are sought; in particular, plaintiffs seek the amount that they would have settled for had they known of the New York Stock Exchange investigation.

Furthermore, nothing in the language of Rule 60(b) supports the defendants' contention that it precludes an action for fraud in connection with a settlement. Rule 60(b) denotes instances when a court "may relieve a party ... from a judgment," but it does not purport to cover damages actions for fraud that seek to affirm or ratify a judgment rather than seek relief from a judgment. Its focus is on a specific remedy—obtaining relief from a judgment—not on all available remedies for fraud.

Because Rule 60(b) by its terms does not control this situation, it is necessary to look to New York law governing what is essentially a common law fraud claim.[2]

■ Neither party disputes that under New York law, a second action for damages rather than for rescission of the judgment or settlement may be brought when a *state court* judgment or settlement is allegedly procured by fraud. *See Slotkin v. Citizens Casualty Co.*, 614 F.2d 301, 312 (2d Cir.), *cert. denied*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980); *Alton v. Alton*, No. 83 Civ. 0795 (S.D.N.Y. July 9, 1982); *Barrett v. United States*, 651 F.Supp. 615, 618 (S.D.N.Y.1986). This result arises from the common law rule that a defrauded party can elect between re-

---

**2.** While this might be considered a question of federal common law relating to ratification of federal judgments, it makes no difference whether the issue is characterized as one of federal or state law. As will be shown below, the policies driving the New York rule compel the same conclusion independent of the applicability of New York law.

scission on the one hand and ratification and suit for damages on the other. *See* O.W. Holmes, Jr., The Common Law (1881); Corpus Juris Secundum § 65. Defendants contend, however, that a federal court settlement is subject to a different rule by virtue of Fed.R.Civ.P. 60(b).

In *Slotkin v. Citizens Casualty Co.*, 614 F.2d 301 (2d Cir.), *cert. denied*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980), the Second Circuit noted that New York law is "clear that one who has been induced by fraudulent misrepresentation to settle a claim may recover damages without rescinding the settlement." *Id.* at 312 (citing cases). Although the claim in *Slotkin* was brought in state court and thus resulted in a state court judgment, the Court did not rely on that fact in concluding that state law should apply to the second suit. Instead, it stated merely that the "settlement stipulation entered into ... was the contract induced by appellees' misrepresentation." *Id.* at 313; *see Barrett v. United States*, 651 F.Supp. 615 (S.D.N.Y. 1986); *see also DiSabatino v. U.S. Fidelity & Guaranty Co.*, 635 F.Supp. 350, 356 (D.Del.1986) (adopting the 'New York rule' in applying Maryland law).

The Court went on to address the "sound premises" for such a rule.

> If all that will result from a misrepresentation is a new trial, then the party making it has everything to gain and nothing to lose. The plaintiffs would be placed at a disadvantage by a new trial; the defendants would not. If anything, defendants would benefit by having a preview of plaintiffs' case. As McCormick notes in the case of willful fraud:
>
> > [I]f the defendant by willful falsehood has cozened the plaintiff into risking his property upon a bargain, which, upon the information given by the defendant, would have been profitable, a remedy which merely seeks to place the plaintiff back in the position he was in before seems hardly adequate. The plaintiff might well be given the value of the expected bargain. A willful fraud should cost as much as a

broken promise. If the cheat can anticipate that the worst that can happen is that he shall be called upon to pay back his profit upon the trade, he may be encouraged to defraud.

> C. McCormick, Handbook on the Law of Damages, § 121, at 453 (1935). Thus the New York rule serves to deter fraud.

614 F.2d at 312.

■ Of course, the present case involves not a prior state court judgment but a prior federal court judgment. Nevertheless, any distinction between the two cases on that basis is unpersuasive. In either case, the settlement agreement is simply a contract, for which consideration has been given on both sides. Although federal claims were made in connection with the Spread Transactions, state law claims were involved as well, just as in *Slotkin*. The claim in both cases is one of common law fraud in connection with the terms of the settlement contract.

Most importantly, the reasoning behind the application of this rule to state court settlements is equally persuasive with respect to settlements in federal court. This rule will be much more likely to deter fraud than the rule the defendants advocate.

According to the defendants, a reasonable reading of Rule 60(b) would limit the plaintiffs to a suit to reopen the judgment to put plaintiffs and defendants back in the position they were in prior to settlement. Then the plaintiffs could start over on their prior claims of fraud in connection with the Spread Transactions. This would mean, of course, that the plaintiffs might have to tender back the proceeds of the prior settlement, *see Mungin v. Florida East Coast Railway Co.*, 318 F.Supp. 720, 735 (M.D. Fla.1970), *aff'd*, 441 F.2d 728 (5th Cir.), *cert. denied*, 404 U.S. 897, 92 S.Ct. 203, 30 L.Ed.2d 175 (1971); *Willard C. Beach Air Brush Co. v. General Motors Corp.*, 88 F.Supp. 849, 852 (D.N.J.), *rev'd on other grounds*, 184 F.2d 569 (3d Cir.1950), and would face the risk that they would go to trial on the Spread Transactions claim and receive less than the original settlement.[3]

---

**3.** In oral argument, Prudential-Bache took the

position that, if the judgment were reopened

If this were the rule, few plaintiffs would choose to enforce their claims of fraud in connection with a settlement, no matter how valid their cause of action. A plaintiff who must give up any benefit he has gained and risk receiving nothing in return will be reluctant to enforce his rights as a victim of fraud. Of course, he may ultimately gain more than he received in settlement the first time, either by going to trial this time around or settling for more, allowing negotiation to set a value on the second alleged instance of fraud. But this chance of receiving more does not justify the deterrent effect of requiring a plaintiff to give up the settlement he received for one claim of fraud to sue for further acts of fraud.

If anyone is aware of the importance of preserving the finality of judgments entered by federal courts, *see, e.g., Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986), this court is. Nevertheless, the importance of finality does not override the important policy of deterring fraud, in the settlement of lawsuits as well as other transactions. Defendants complain that if a document turns up or answers to interrogatories or at deposition are claimed to be untruthful, "a settling party could sue anew with impunity—with everything to gain and nothing to lose." This is equally true, of course, with any claim of fraud—that the defrauded party can sue for its damages with everything to gain and nothing *more* to lose. Such an argument does not recognize that even plaintiffs who have settled should not have to run still more risks in recovering their damages. If a case is

frivolous, Rule 11 sanctions may be imposed.

Defendants' argument that a rule permitting plaintiffs to sue for damages in a second action will permit an end-run of Rule 60(b) in every case is overstated. It is true that parties will be allowed to sue for damages in cases where they settled for less based on an alleged fraud or gained a favorable judgment after trial, which they now claim would have been even more favorable. Nevertheless, Rule 60(b) covers many other situations, where the plaintiff is indeed asking for relief from a judgment entered against him, within the terms of the rule. *See, e.g., Black v. Niagara Mohawk Power Corp.*, 641 F.Supp. 799 (N.D. N.Y.1986) (applying Rule 60 to a request for relief from summary judgment).

The possibility that the plaintiffs' proposed rule would lead to inconsistent remedies depending upon whether the forum states of the first and/or second federal court actions allow money damages for a fraudulently procured settlement does not call for a different result. As a preliminary matter, a uniform federal common law rule could be adopted as necessary to effectuate the purpose of Rule 60(b) and promote the important goal of uniformity in handling federal judgments. Even if state law controls this case, however, it is not unjust to apply the forum state's law to what is essentially a state law claim—common law fraud. The state interest in preventing contracts induced by fraud is implicated in such an action.

Therefore, the motion to dismiss the complaint for failure to allege compliance with the requirements of Rule 60 is denied. Be-

under Rule 60(b), the plaintiffs could then sue for damages on both the original claim and the new claim of fraud, including a claim for punitive damages. If that were so, however, the claim of fraud in connection with the settlement would presumably not be tried again, since the defendants would be collaterally estopped from challenging the court's determination. Nevertheless, the jury would presumably have to find the amount of damages and set punitive damages, if any, leading to an odd bifurcation of functions. It would make more sense to have the merits and damages tried at the same time.

The papers, on the other hand, assume that the action under Rule 60(b) would be the only

relief against fraud in connection with the settlement, and that, upon reopening, the original action would involve only the claims based on the Spread Transactions, thus allowing for no damages based on the alleged settlement fraud. This would be an outrageous result. Although the plaintiffs could presumably go to trial or get a greater settlement based on their new-found knowledge of the Exchange investigation, they would have no claim for actual or punitive damages for an act determined by the court to be fraudulent. The drafters of the Federal Rules clearly could not have intended this deprivation of a state law substantive right.

cause the relief sought falls outside the reach of Rule 60, that Rule cannot be said to require the plaintiffs to tender back their settlement and sue to reopen the earlier judgment. Plaintiffs may instead affirm the earlier settlement and seek damages for the alleged fraudulent inducement of the settlement.

**Non-Party Plaintiffs**

■ Four of the current 56 plaintiffs were not parties to either of the prior actions; instead, they claimed and settled informally. As to these plaintiffs, there is no "judgment" and Rule 60 does not even arguably apply. Even if the outcome with respect to the other 52 defendants were otherwise, the New York rule of election would apply to the settlements of these 4 plaintiffs and the action would not be dismissed.

■ Defendants further argue that because these four plaintiffs were not parties to the prior actions, the alleged failure to produce certain documents in those actions could not be a basis for the present claim. Although it is true that these plaintiffs never served document requests, it is also the case that they and the other plaintiffs were represented by the same lawyer. A jury might determine that it was reasonably foreseeable that this lawyer would communicate defendants' alleged misinformation to all of his clients who were claiming damages resulting from the Spread Transactions and not just to those who actually brought suit. In *Ostano Commerzanstalt v. Telewide Systems, Inc.*, 794 F.2d 763, 765–66 (2d Cir.1986), the Court stated:

> Since the leading case of *Ultramares Corp. v. Touche*, 255 N.Y. 170, 179 [174 N.E. 441] ... (1931), a fraudulent misrepresentation made with "notice in the circumstances of its making" that the person to whom it was made would communicate it to third parties subjects the person making the misrepresentation to liability to the third party.

■ Similarly, Sullivan & Cromwell was not named as a party to the prior actions, since it was not charged with having made any misrepresentations or omissions in or-

der to induce investments. In this action, it is charged with having fraudulently concealed the evidence of a New York Stock Exchange investigation into the Spread Transactions.

Defendants argue that even though Sullivan & Cromwell was not a party to the earlier litigation, Sullivan & Cromwell was in privity with Prudential-Bache as its counsel and the judgment therefore inures to the benefit of Sullivan & Cromwell. *See Browning Debenture Holders' Comm. v. DASA Corp.*, 454 F.Supp. 88, 104 (S.D.N.Y.), *aff'd*, 605 F.2d 35 (2d Cir.1978). It is unnecessary to reach this argument, since the court has found that Rule 60 does not limit plaintiffs to a suit to reopen the prior judgment against Prudential-Bache. Since the plaintiffs are free to sue Prudential-Bache for damages, they may also sue other participants in the alleged fraud.

Therefore, the motion to dismiss the complaint is denied, and discovery will proceed upon a schedule to be determined at a pretrial conference to be held on August 5, 1987.

IT IS SO ORDERED.