# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3624

_____

Loren Martin Hatch,          *
                                  *
         Appellant,       *
      v.                       *    Appeal from the United States
                                  *    District Court for the Eastern
TIG Insurance Company,      *    District of Missouri.
a California corporation;       *
K&K Insurance Group, Inc.,    *
an Indiana Corporation,      *
                                  *
         Appellees.       *

_____

Submitted: June 13, 2002

Filed: August 21, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

In this diversity action, Loren Martin Hatch appeals the district court's[1] order dismissing, pursuant to Federal Rule of Civil Procedure 12(c), this case arising out of a discovery dispute during prior, collateral state court litigation. We affirm.

_____

[1]The Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri. The parties consented to trial before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), with direct review to this court.

## I.    BACKGROUND

Hatch was injured while bungee-jumping at a fair in St. Louis in 1993. Following a trial and appeal in the Missouri state courts, the case settled when TIG Insurance Company agreed to pay Hatch $6,180,000 in satisfaction of his claims against Northstar Entertainment and V.P. Fair Foundation. Northstar and V.P. were insureds of TIG, under a policy managed by K&K Insurance Group.

Hatch subsequently brought this action against TIG and K&K for alleged misstatements and misrepresentations about the extent of liability insurance coverage involved in the underlying state court litigation. Hatch brought the action in Missouri state court, and TIG removed the case to federal court pursuant to 28 U.S.C. § 1446 (removal), and 28 U.S.C. § 1332(a)(1) (diversity).

In this action, Hatch seeks damages for intentional and negligent misrepresentation, intentional and negligent infliction of emotional distress, intentional and negligent breach of the duty of fair dealing, and "prima facie tort." The facts, viewed in the light most favorable to Hatch,[2] are as follows. During discovery in the underlying case, interrogatory number six requested disclosure of the amount of Northstar's and V.P.'s insurance coverage. Northstar answered by indicating that it would produce a copy of the declaration page and certificate of

---

[2]References to documents not attached to Hatch's petition are properly considered under the standards of Rule 12(c) because Hatch's petition references and relies upon such documents as the basis for his claims, and because the documents are part of the public record from the earlier underlying state court proceedings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (deciding that on motion for judgment on the pleadings, court may consider materials that are necessarily embraced by the pleadings or part of the public record which do not contradict the petition).

insurance. V.P. and Northstar later filed four supplemental answers to interrogatory number six.

The first one, served in April 1996, stated that there existed $1,000,000 of commercial general liability insurance coverage through TIG. The second, served in January 1997, stated that there was "a dispute between the insurance carrier and the insured regarding the amount of coverage." A third, served in February 1997, stated that there was $5,000,000 of coverage, and elaborated that "[d]efendant is aware that the insurer has attempted to take the position that the coverage amount is $1,000,000. Defendant considers this attempt by insurer to be totally without merit." A final supplemental answer, served on May 15, 1997,[3] stated unequivocally that there existed $5,000,000 of coverage.

As early as March 1996, Hatch began to inquire directly to TIG regarding insurance coverage amounts by subpoenaing TIG policy-related documents and noticing TIG and K&K employees for depositions. The certificates of insurance produced by TIG indicate that during the summer of 1993, Northstar operated its bungee-jumping crane at eleven different sites, and certificates were issued for each site. For the V.P. Fair site, Northstar sent K&K a form requesting $5,000,000 of insurance coverage. Six different certificates were issued to Northstar between June 17 and June 29, 1993. All six certificates indicate $5,000,000 of general aggregate liability coverage; five of the certificates indicate $1,000,000 of participant legal liability coverage; and one indicates $5,000,000 of participant legal liability coverage.

Summarized and simplified, the undisputed facts indicate that several certificates of insurance were issued for the V.P. Fair location, indicating either $5,000,000 or $1,000,000 in insurance. Prior to trial in April 1997, Hatch, at the very

---

[3]This supplemental answer indicates that it was notarized on April 14, 1997, but not served until May 15, 1997.

least, knew there was a dispute between the insurer and the insured regarding the amount of coverage available. Certainly prior to settlement in May 1999, Hatch knew of this dispute and the possibility of $5,000,000 in insurance coverage.

## II.    DISCUSSION

This court reviews the district court's grant of judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) de novo. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). We also review de novo the district court's application of state law in diversity cases. Lefler v. Gen. Cas. Co., 260 F.3d 942, 945 (8th Cir. 2001).

The essence of Hatch's seven claims for relief are that TIG and K&K provided false information, either during discovery or at trial, regarding the amount of Northstar's and V.P.'s insurance coverage. However, Hatch also undisputably received all pertinent documents and information regarding the possibility of $5,000,000 in insurance coverage prior to settlement of that case. Before trial in April 1997, Hatch was on notice of the dispute over the amount of coverage between Northstar/V.P. and TIG/K&K. Prior to settlement, Hatch knew of the possible existence of $5,000,000 of insurance coverage. Missouri law indicates that his claim is therefore barred. Phipps v. Union Elec. Co., 25 S.W.3d 679 (Mo. Ct. App. 2000).

In Phipps, the plaintiff from a prior wrongful death lawsuit filed a separate action against the defendants and their attorneys for fraudulent misrepresentation. The plaintiff alleged that through the course of discovery in the prior suit, defendants failed to admit that accident photographs existed, and even after this was later revealed, only disclosed twenty-seven of thirty-two available photographs. The remaining five photographs were not revealed until the pre-trial conference, at which point the trial was postponed, and the litigants eventually settled. The Missouri Court of Appeals held that "[w]here fraud is alleged to have occurred during the course of

-4-

discovery" and a party becomes aware of this misconduct during the litigation, that party's sole and exclusive remedy lies in the pursuit of a motion for sanctions during the litigation in which such alleged conduct occurred. Id. at 681-82. Specifically, the court stated that such alleged misconduct does not create a separate cause of action for damages relating to the discovery violation. Id. at 681.

Likewise, Hatch's exclusive remedy for litigation misconduct in the underlying case was *during* the underlying case. Hatch should have sought to redress his claims against the insurance companies through Missouri Court Rules, such as Rules 61.01 and 55.03, which provide Missouri courts with a remedial scheme for addressing litigation misconduct during the course of discovery and at trial. Rule 61.01 addresses discovery misconduct, and Rule 55.03 deals with litigation misconduct in general, and is Missouri's equivalent to Rule 11 of the Federal Rules of Civil Procedure.

Hatch argues that neither rule allows significant monetary penalties and therefore they do not adequately redress his economic damage resulting from TIG and K&K's conduct. However, in our view, the point of the Phipps holding is that injuries to plaintiffs like Hatch are adequately redressed when the alleged misconduct is discovered during the course of the lawsuit. Because Hatch knew prior to settlement that, at the very least, there was a dispute regarding the amount of coverage and that $5,000,000 of coverage was a distinct possibility, Hatch was able to avoid damages which would have resulted if he had only believed there was a possibility of $1,000,000 of coverage prior to settlement.[4] "'"If at the time the parties entered into the new agreement the facts as to the fraud and deceit were known, it is to be presumed that both parties acted with that question in view, and the new agreement was the wiping out of all old scores."'" Phipps, 25 S.W.3d at 682 (quoting

---

[4]In fact, we note the settlement amount in excess of $6,000,000 very likely encompassed the possibility of $5,000,000 of insurance coverage.

Peck v. Jadwin, 704 S.W.2d 708, 711 (Mo. Ct. App. 1986)) (quoting Brown v. South Joplin Lead & Zinc Mining Co., 132 S.W. 693, 695 (1910)).

Hatch also argues that he can pursue this action because he did not release any claims against TIG and K&K in the underlying settlement agreement. Again, this misses the point. The termination of the prior action resulted in a waiver of his claims against TIG and K&K, and he therefore "reserved" nothing. Furthermore, while we can sympathize with plaintiffs having difficulty getting straight answers from insurance companies involved in litigation, we believe the policy of the State of Missouri is that such disputes be settled within the subject action. We are also confident that Missouri state district courts have wide latitude to fashion a remedy appropriate to the situation.

While Hatch correctly points out that in Phipps the underlying misconduct involved fraud and conspiracy, we disagree that this fact meaningfully distinguishes it from Hatch's action. Rather, we believe that Phipps stands for the broader proposition that Missouri courts will not allow litigants to undertake serial litigation based on disputes which arise out of the underlying litigation. Phipps, 25 S.W.3d at 681-82. Thus, all of Hatch's claims, and not just those alleging fraud, are barred by the principles announced in Phipps.[5]

---

[5]Hatch's reliance on Vickers v. Progressive Casualty Insurance Co., 979 S.W.2d 200 (Mo. Ct. App. 1998), is misplaced. In Vickers, the plaintiffs brought an action for negligent misrepresentation against the insurance company. However, the alleged negligent misrepresentation did not occur during underlying litigation. Instead, the Vickers plaintiffs sued the insurance company for its conduct during settlement negotiations which occurred immediately after the automobile accident. Id. at 202. The insurance company in Vickers was obviously not subject to the sanctioning power of the district court in a prior action because there was no prior action.

Finally, we agree with the district court that Hatch could have pursued the remedies contained in Rules 61.01 and 55.03 against TIG and K&K in the underlying litigation because of the close relationship between insurer and insured.  See Simper v. Trimble, 9 F.R.D. 598, 599-600 (W.D. Mo. 1949) (stating that insurers of defendants are within jurisdiction of the trial court and subject to the rules of civil procedure as defacto parties); cf. In re Allstate Ins. Co., 722 S.W.2d 947, 951-52 (Mo. 1987) (en banc) (considering possible conflicts of interest when insurance company's attorney represents the insured and finding that insurer has vital interest in suit even though not named and has the right to direct and control the litigation).

## III.   CONCLUSION

Hatch's numerous remaining contentions are without merit.  We affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.