Sheila A. ROTH and Robert R. Roth, Appellants,

v.

LA SOCIETE ANONYME TURBOMECA FRANCE, Turbomeca Engine Corporation, Mendes and Mount, LLP, Kevin Cook, Douglas N. Ghertner, Associated Aviation Underwriters, Centennial Insurance Company, Continental Insurance Company, Federal Insurance Company, and Firemen's Fund Insurance Company, Respondents,

and

La Reunion Aerienne, La Reunion Francaise Societe Anonyme D'Assurances et de Reassurances, L'Union Des Assurances de Paris–Incendie/Accidents, Abeille Assurances, Caisse Industrielle D'Assurance Mutuelle, La Concorde, General Accident Fire and Life Assurance Corporation P.L.C., Irish National Insurance Company P.L.C., Mutuelle Electrique D'Assurances, La Mutuelle Du Mans I.A.R.D., Rhin et I.A.R.D., Preservatrice Fonciere Assurances, Axa Corporate Solutions Insurance Company, L'Union Des Assurances De Paris, Arig Insurance Company, Ltd., The American Insurance Company, Allianz Insurance Company, American Motorist Insurance Company, Sun Insurance Office of America, Inc., Firemen's Insurance Company of Newark, New Jersey, Glen Falls Insurance Company, Compagnie Des Assurances Maritimes, Aeriennes et Terrestres, Skandia Insurance Company, Ltd., Aviator, Aviafrance, New Hampshire Insurance Company, Insurance Company of North America, Ltd., Sirius Insurance P.L.C., Arig Insurance Company, Ltd., Corporation of Lloyd's, and numerous unnamed individual defendants, Defendants.

No. WD 61927.

Missouri Court of Appeals, Western District.

Sept. 30, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 2003.

Application for Transfer Denied Dec. 23, 2003.

See also 963 S.W.2d 639, 975 S.W.2d 155.

Charles Robert Buckley, Independence, for Appellant.

Jennifer Kyner, Daniel Hamann, Gene Voigts, Kansas City, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

When a lawsuit's defendants lie about insurance coverage and induce the plaintiff to settle, should the courts permit the plaintiff to enforce the settlement but sue for damages growing out of the fraudulent inducement? That is the issue in this case. Sheila and Robert Roth sued La Societe Anonyme Turbomeca France, Turbomeca Engine Corporation,[1] numerous insurance companies, the law firm of Mendes and Mount, LLP, and attorneys Kevin Cook and Douglas N. Ghertner on various claims for damages growing out of their claim that they had been wrongfully induced to settle their lawsuit by lies about insurance coverage. The Roths, however, want to enforce their settlement and pursue this claim. The circuit court dismissed this lawsuit on the primary ground that, if the settlement was fraudulently induced, it was void and their only remedy was to pursue their original action. The circuit court erred, and we reverse its judgment in part and affirm in part. We remand the case for further proceedings.

The Roths sued originally for injuries sustained by Sheila Roth in a 1993 helicopter crash in which she was permanently crippled. She was working as a nurse on the flight. The helicopter's engine failed because of a defective engine part manufactured by La Societe Anonyme Turbomeca and distributed by Turbomeca Engine. The pilot and a medical patient being transported in the helicopter died in the crash. A respiratory therapist on board also suffered serious injuries.

The Roths, the therapist and relatives of the two decedents sued Turbomeca and others. Because of the multiplicity of lawsuits with identical issues, the circuit court ordered that all of the plaintiffs share discovery. Details of the other lawsuits are reported in *Letz v. Turbomeca Engine Corporation*, 975 S.W.2d 155 (Mo.App. 1998), and *Barnett v. La Societe Anonyme Turbomeca France*, 963 S.W.2d 639 (Mo. App.), *cert. denied*, 525 U.S. 827, 119 S.Ct. 75, 142 L.Ed.2d 59 (1998).

One of the plaintiffs asked in interrogatories submitted to Turbomeca whether or not the firms had insurance to cover any

---

1. For convenience, we will refer to La Societe Anonyme Turbomeca France and Turbomeca Engine Corporation jointly as Turbomeca.

judgment arising from the helicopter crash. Turbomeca responded that the maximum insurance coverage was approximately $50 million. The Roths later learned that, in fact, the firms had a maximum insurance coverage of approximately $1 billion.

The circuit court scheduled the Roths' suit for trial after the suits of the other plaintiffs. Before learning of the actual amount of insurance coverage, the Roths feared that $50 million in insurance coverage would not be sufficient to satisfy all of the plaintiffs' judgments, so they decided to settle. On April 14, 1995, they executed a release and settlement agreement with Turbomeca. The following week, the defendants established and funded annuities to fulfill the settlement agreement.

On May 3, 1995, the Roths discovered the actual amount of insurance coverage. The Roths, however, decided against asking the circuit court to set aside the settlement agreement in favor of suing on an independent action for fraud. One reason, they explained at oral argument, was that the settlement moneys had been dispersed and expended, making its return highly impracticable. Pursuant to their release, the Roths voluntarily dismissed their lawsuit with prejudice, and later filed this action naming multiple defendants, including Turbomeca, various primary and excess insurers, and the attorneys providing legal representation for the defendants in the underlying personal injury action, Mendes and Mount, Kevin Cook, and Douglas N. Ghertner.

The suit sounded in four counts and sought recovery for the harm caused by alleged misrepresentations regarding insurance coverage. Count I alleged fraud and named as defendants all of the defendants except for the attorneys. Count II alleged negligent misrepresentation and named only the attorneys as defendants. Counts III and IV alleged fraudulent concealment and civil conspiracy and named all of the defendants as defendants.

Several of the defendants filed motions to dismiss on the ground that the Roths had failed to state a claim. The attorneys sought to dismiss Counts II, III, and IV against them, and Turbomeca and various insurance companies sought to dismiss Counts I, III, and IV against them.

On July 24, 2002, the circuit court entered an order indicating that it was granting each of the defendants' motions to dismiss. The circuit court determined that nothing justified delaying an appeal of the order dismissing the claims and, on September 17, 2002, entered judgment pursuant to Rule 74.01(b). The Roths appeal.

## Count I

Before addressing the merits of the circuit court's decision to dismiss Count I, we must determine what issues that the Roths raise in their point relied on. With the exception of discretion granted to us under Rule 84.13(c), our review of an appeal is restricted to the issues that an appellant raises in a point relied on. Rule 84.04(d)(1)(A); *City of Kansas City v. New York–Kansas Building Associates, L.P.*, 96 S.W.3d 846, 855 (Mo.App.2002).

In their first point relied on, the Roths assert:

The trial court erred in dismissing Count I of the Roths' Amended Petition for damages for fraud against the Turbomeca Defendants for failure to state a calim because the Roths' Amended Petition stated a cause of action for fraud against the Turbomeca Defendants under Missouri law which recognizes that settlement agreements procured through fraud in the inducement are voidable rather than void and allows a plaintiff induced by fraud to settle a cause of action an election of remedies including an election to seek damages for fraud, in that the Roths alleged that

the Turbomeca Defendants fraudulently misrepresented the limits of insurance coverage as being only $50 million at a time when they knew that representation was false, that the Roths relied on the Turbomeca Defendants' knowing misrepresentation, that the Roths were induced to settle their cause of action, and that the Roths were damaged by the false information and their reliance thereon by settling their cause of action for less than its fair value and were damaged.

The ruling or action that the Roths challenge in their point is the circuit court's dismissing "Count I of the Roths' Amended Petition for damages for fraud against the Turbomeca Defendants[.]" In their statement of facts, the Roths defined "Turbomeca Defendants" as La Societe Anonyme Turbomeca France and Turbomeca Engine Corporation. They now argue that we should interpret their reference to Count I as challenging dismissal of Counts I and III, and their reference to the "Turbomeca Defendants" as including the insurance companies.

■ We deny the Roths' request that we treat their point relied on as including an appeal to the dismissal of Count III. Rule 84.04(d) places the burden on the Roths to articulate the precise issue they were raising. Permitting them to escape this burden would be unfair to the respondents who depended on their point relied on for notice of what issue the Roths are raising. *City of Kansas City*, 96 S.W.3d at 855. It also would wrongfully require us to scour the record assessing the degree of similarity between the counts or to determine whether or not the appellants meant something other than what they explicitly stated in their point relied on. *Rosehill*

*Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 646 (Mo.App.2002). A point relied on serves two purposes: to provide notice to the respondent of the exact issue raised by the appellant and to apprise this court of the issue on appeal. *City of Kansas City*, 96 S.W.3d at 855. This purpose would be disserved and we would become the appellant's advocate were we to review the dismissal of a count that the appellant has not seen fit to appeal or brief.

Additionally, we take note that Count III named as defendants Mendes and Mount, Cook, and Ghertner, while Count I specifically excluded them. Were we to review a point explicitly challenging the dismissal of Count I as including Count III, we would be working an injustice to the attorneys. The attorneys did not respond to the Roths' point challenging the dismissal of Count I for the obvious reason that they were not party to it. The attorneys did not address the Roths' complaint concerning the circuit court's dismissal of Count III for the obvious reason that they had no notice that it was being appealed. The Roths would apparently have us take pieces of the attorneys' arguments in response to the dismissal of Counts II and IV—involving negligent misrepresentation and civil conspiracy—as providing them an adequate opportunity to respond to the dismissal of Count III. We will decline to do so.

■ Whether or not we should review the Roths' point as including the insurance companies, which were named as parties to Count I, is another matter. Although the Roths' point relied on could be read as challenging dismissal against only Turbomeca, the phrase "Turbomeca Defendants" is sufficiently vague as to arguably include the dismissed insurers, too.[2] We

---

2. The circuit court dismissed multiple insurers for failure to state a claim. We review the dismissal only as to the insurers that the Roths named as respondents to this action:

Associated Aviation Underwriters and its members. Furthermore, we review only as to members Centennial Insurance Company, Continental Insurance Company, Federal In-

occasionally will overlook a shortcoming in a point relied on so long as we can ascertain the issues being raised with some degree of certainty by considering the argument in conjunction with the point, and so long as it does not force us to become an advocate for the appellant. *Loumiet v. Loumiet,* 103 S.W.3d 332, 345 (Mo.App. 2003). Including dismissal of the respondent insurance companies within the point's scope does not present the same concerns as we faced in regard to the Roths' contention that they intended to include Count III within the point's scope. We do not become the Roths' advocates by reading the point as including the respondent insurers, and we do not, in effect, rewrite their point relied on or deprive a party of an opportunity to respond. That the Roths intended to appeal dismissal of the respondent insurance companies and that they did not intend for their definition of "Turbomeca Defendants" to restrict the scope of their point relied on is evident. Of key significance, however, is that the respondent insurance companies had sufficient notice of the point and did respond. Indeed, Turbomeca's counsel, who was also counsel for the respondent insurance companies, said, "[T]o the extent this appeal is deemed to encompass the other defendants dismissed . . . this Brief should be deemed filed on behalf of those defendants as well." We, therefore, review the Roths' first point as restricted in its scope to the circuit court's dismissal of Count I and involving the dismissal of Turbomeca and the respondent insurance companies.

In dismissing Count I, the circuit court relied on *Bockover v. Stemmerman,* 708 S.W.2d 179 (Mo.App.1986), and *Mackley v. Allstate Insurance Company,* 564 S.W.2d 634 (Mo.App.1978), to conclude that a party fraudulently induced to release a tort claim cannot sue for the fraud. Those were, indeed, the holdings of *Bockover* and *Mackley,* but the *Bockover* and *Mackley* courts wrongly relied on an early decision, *Lomax v. Southwest Missouri Electric Railway Company,* 106 Mo.App. 551, 81 S.W. 225 (1904).

In *Lomax,* an individual fraudulently induced to sign a release of a tort claim sued to recover the damages resulting from the deceit rather than seeking to have the settlement set aside. The *Lomax* court held that the plaintiff could not sue independently for fraud in the inducement to release a tort claim on the rationale that, if

surance Company, and Firemen's Fund Insurance Company. While the AAU has other members, the circuit court did not enter an order dismissing them as defendants. They were not included in any motion to dismiss. They had not been served with process. Existence of other defendants raises a jurisdictional issue that we address *sua sponte.* Typically, the existence of a defendant not disposed of by the circuit court defeats finality of the judgment and deprives us of jurisdiction regardless of whether or not the defendant has been served with process because an unserved defendant remains a party nevertheless. *See, e.g., State ex rel. Schweitzer v. Greene,* 438 S.W.2d 229, 231–32 (Mo. banc 1969); *Downey v. United Weatherproofing, Inc.,* 241 S.W.2d 1007 (Mo.1951); *Maurer v. Clark,* 727 S.W.2d 210, 211 (Mo.App.1987). Rule 74.01(b), however, has created an excep-

tion. It allows an appeal to proceed even in cases in which some defendants have not been served or have been served but not disposed of by the circuit court. *See, e.g., Garrett v. Finnell,* 999 S.W.2d 304, 305 (Mo.App. 1999); *LCA Leasing Corp. v. Bolivar Professional Pharmacy, Inc.,* 901 S.W.2d 342 (Mo. App.1995); *BCCLW/Casey, Inc. v. S.O. Gillioz Partners, Inc.,* 783 S.W.2d 174, 176 (Mo.App. 1990). If at least one party's claim has been fully resolved, that matter may be appealed so long as the circuit court declares that it saw no just reason for delaying an appeal. *Beckmann v. Miceli Homes, Inc.,* 45 S.W.3d 533, 538 (Mo.App.2001). These are the circumstances in this case. All of the Roths' claims have been fully resolved as to the parties to this appeal, and the circuit court declared that it saw no just reason for delaying an appeal of these matters.

the release were induced by fraud, the release was void. This meant, the *Lomax* court reasoned, that the plaintiff was returned to where he was before the release, relieved from his restraint from suing on the underlying claim. Thus, having lost nothing of value, the plaintiff was not damaged.

The Supreme Court rejected *Lomax's* reasoning 21 years later in *Metropolitan Paving Company v. Brown–Crummer Investment Company*, 309 Mo. 638, 274 S.W. 815 (banc 1925). The appellant in *Metropolitan Paving* argued on the basis of *Lomax* that a contract induced by fraud is void. The Supreme Court rejected the reasoning by the *Lomax* court as "unsound, and ... in conflict with numerous rulings of the Courts of Appeals and of this court." *Id.* at 818. Instead, the Supreme Court, without making a distinction as to types of contracts, concluded that a contract is voidable if induced by fraud:

> If a party defrauded misunderstands the nature of the contract so that the minds of the parties never meet on its terms, it is void. But if, understanding its terms, he is induced to sign it by fraudulent representations outside of its terms, it is voidable and must be set aside before the party defrauded can maintain an action upon it.

*Id.* at 819.

■ Other Supreme Court decisions coming before and after *Lomax* made the same distinction between cases involving fraud in the *factum*, which renders a contract void *ab initio*, and those involving fraud in the inducement, which render a contract voidable. *See, e.g., Och v. Missouri, Kansas & Texas Railway Company*, 130 Mo. 27, 31 S.W. 962, 966 (banc 1895); *Nelson v. Browning*, 391 S.W.2d 873, 877 (Mo.1965). A contract involving fraud in the inducement affords the victimized party a choice of remedies: to rescind the contract or to enforce it and sue inde-

pendently for the damages resulting from the fraud. *Cabinet Distributors, Inc. v. Redmond*, 965 S.W.2d 309, 314 (Mo.App. 1998); *Groothand v. Schlueter*, 949 S.W.2d 923, 927 (Mo.App.1997); *Osterberger v. Hites Construction Company*, 599 S.W.2d 221, 227 (Mo.App.1980).

The *Mackley* court acknowledged *Metropolitan Paving* but endeavored to distinguish it on the ground that it had concerned a contract dealing with the sale of bonds. Such a contract, the *Mackley* court reasoned, was an "ordinary contract rather than a particular species of contract as is a release." *Id.* at 637. The *Mackley* court, however, overlooked cases, such as *Nelson*, 391 S.W.2d at 877, and *Watson v. Bugg*, 365 Mo. 191, 280 S.W.2d 67, 69 (banc 1955), in which the Supreme Court declared that a contract to release a tort claim was subject to the same void and voidable distinction as contracts in general.

In *Bockover*, this court relied totally on *Mackley* and did not acknowledge awareness of *Metropolitan Paving* or other similar Supreme Court cases. While conceding that general contract law would allow a fraudulently induced party to elect either to enforce a contract and to sue for damages or to rescind it, the *Bockover* court reaffirmed the *Mackley* court's belief that releases were an exception to the rule.

The *Mackley* court did not rest its holding entirely on the view that a fraudulently induced release is void. It delineated other grounds that it believed justified its ruling that releases of tort claims were an exception and subject to special rules. We are not persuaded by the additional rationale.

*Mackley* first contended that releases were exceptional contracts because in the case of "ordinary contracts ... a person subjected to fraud in the inducement has usually parted with something tangible while in [a release] a releasor subjected to

fraud in the inducement has actually parted with nothing as he can still maintain an action on the underlying tort." 564 S.W.2d at 636. The *Mackley* court reached this conclusion, of course, only by assuming that a fraudulently-induced release is void, and the Supreme Court rejected this assumption in *Metropolitan Paving.* It later reaffirmed rejection of the assumption in *Watson* and *Nelson.*

The *Mackley* court next suggested:

[I]t is illogical to say that a releasor claiming fraud in the inducement can simultaneously affirm the extrajudicial settlement of his claim for damages for personal injuries sustained as a result of the underlying tort and at the same time renege on his bargain and maintain an action for fraud and deceit when the measure of damages, if any, in the action for fraud and deceit is inextricably bound with the question of liability and the nature and extent of the injuries involved in the underlying tort claim which was settled.

*Id.* The *Mackley* court also suggested that, because "inherent difficulties cloud the measure and assessment of damages," a fraudulently induced releasor should not be permitted to sue for fraud. *Id.*

█ We first disagree with the underlying assumption that the releasor would be reneging on the bargain. He would not be reneging because he would not be pursuing the released tort claim, but an independent claim created by the fraud. Second, damages for the fraud are not "inextricably bound" to the nature and extent of the injuries involved in the underlying tort. They are conceptually different. The measure of damages for the fraud is not the nature and extent of the injuries arising from the underlying tort claim, but the nature and extent of the damages caused by fraudulently inducing the plaintiff to enter the release. Thus, the underlying injuries are relevant to the independent

fraud claim only to the extent of their effect on the settlement value in light of the true insurance coverage available. *DiSabatino v. United States Fidelity and Guaranty Company,* 635 F.Supp. 350, 354–55 (D.Del.1986) (countering the argument as formulated in *Mackley.*) Moreover, difficulty in assessing damages is not uncommon and should not be a sufficient basis for refusing to recognize a valid cause of action.

Finally, *Mackley* asserted:

[I]f a releasor claiming fraud in the inducement stands on the release (retains the fruits of the settlement) and brings an action for fraud and deceit and fails to obtain a verdict in his favor, an absurd and unjust result has been legally foisted because the releasee for all practical purposes was held to the release while the releasor for all practical purposes was released therefrom (as evidenced by his bringing a fraud action which inextricably involves the underlying tort claim) without parting with any consideration.

564 S.W.2d at 636–37. This distinction is closely related to the previous rationale, and we reject it for the same reason. A release's scope is a matter of contract. *Andes v. Albano,* 853 S.W.2d 936, 941 (Mo. banc 1993). Unless the release of the underlying tort is so broad as to include a release of additional torts occurring during the course of the litigation process, allowing the releasor to maintain an action for a tort unrelated to the underlying tort does not grant the releasor a reprieve from the release. Moreover, the underlying tort claims are not inextricably involved, but essentially irrelevant. A party suing for fraud in the inducement of a release is not suing for the tortious conduct underlying the released claims, but for the contractual damages that he suffered as a result of the subsequent fraud foisted upon him.

Contrary to the reasoning in Lomax, Mackley, and *Bockover*, the Roth's release was voidable at their election because of the nature of Turbomeca's alleged fraud.[3] They could enforce their settlement agreement with Turbomeca and still maintain an independent tort claim for fraud. *Cabinet Distributors*, 965 S.W.2d at 314; *Groothand*, 949 S.W.2d at 927; *Osterberger*, 599 S.W.2d at 227.

■ Turbomeca further asserts, however, that the circuit court properly dismissed the Roths' lawsuit because they alleged a mere conclusion—that they were helpless and unable to set aside the settlement once the annuities had been funded—and did not allege facts in support of the conclusion. We agree that the circuit court should not consider conclusions unsupported by factual allegations in considering a motion to dismiss for failure to state a claim. *Commercial Bank of St. Louis County v. James*, 658 S.W.2d 17, 22 (Mo. banc 1983). The argument, however, has no significance because the unsupported conclusions did not make any difference in the Roths' ability to state a claim.

■ This is because the Roths pleaded facts that, if proven, satisfied the nine elements for establishing fraud: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that it be acted on by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely on the representation; and (9) the hearer's consequent and proximate injury. *Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 536 (Mo. banc 2002). That the Roths sustained injuries—not whether they could

have done something about those injuries after the fact—is what satisfies the damage element of a fraud claim. In other words, the cause of action was complete when the Roths sustained the damage. That the Roths did not plead facts supporting their conclusion is of no significance.

■ Turbomeca next argues, on the basis of *Phipps v. Union Electric Company*, 25 S.W.3d 679 (Mo.App.2000), and *Hatch v. TIG Insurance Company*, 301 F.3d 915 (8th Cir.2002), that an independent action for fraud cannot arise from misrepresentations made during a lawsuit's discovery stage. We agree that, as a general proposition, if a party to a lawsuit discovers that a fraud was perpetrated against him during discovery and the action is still pending, he should request relief at that time rather than bringing a second action. *Phipps*, 25 S.W.3d at 681 (citing *Klein v. General Electric Company*, 728 S.W.2d 670, 671 (Mo.App.1987)). The rule, applied in both *Phipps* and *Hatch*, is sound and serves a valid function. Its rationale, however, does not warrant its application to the Roths' case.

The circumstances in *Phipps* and *Hatch* were significantly different from the Roths' situation. In those cases, the plaintiffs were misled during discovery, but both learned the truth before settling their cases. Nevertheless, the plaintiff in *Phipps* was upset that the opposing party had lied to her and caused her to incur additional litigation expenses, and the plaintiff in *Hatch* was upset that the opposing party had misled him and had caused him to endure emotional distress in getting to the truth. Both filed subsequent actions seeking to recover in tort, and the courts in both cases dismissed the actions for failure to state a claim. In

---

**3.** The court en banc has reviewed this point and concurs in rejecting the holdings of Lo-max, Mackley, and Bockover that a release induced by fraud is void, not voidable.

both cases, the plaintiffs sought recovery for harm caused during discovery but had settled their cases knowing of the harm. As this court's eastern district said in *Phipps*, " 'If at the time the parties entered into the new agreement the facts as to the fraud and deceit were known, it is to be presumed that both parties acted with that question in view, and the new agreement was the wiping out of all old scores.' " *Phipps*, 25 S.W.3d at 682 (quoting *Peck v. Jadwin*, 704 S.W.2d 708, 711 (Mo.App.1986)).

 When discovery misconduct comes to light while a case is pending, the rules of civil procedure provide complete and adequate relief. *Id.; Hatch*, 301 F.3d at 918. A plaintiff, however, who does not discover the fraud until after the parties have executed the settlement agreement does not have an opportunity to consider whether or not the rules provide adequate relief. Unlike the plaintiffs in *Phipps* and *Hatch*, the Roths are not suing because they endured the inconvenience or aggravation of a discovery violation, but because that violation resulted in their executing a settlement agreement that they would not have executed had they known the truth. This is a distinction of major significance.

 Turbomeca argues that, had the Roths informed the circuit court of the alleged misrepresentation rather than dismissing their lawsuit, the circuit court could have employed appropriate sanctions pursuant to Rule 61.01 and could have allowed the Roths to take their underlying tort claims to trial. But at what cost to the Roths? Were they to proceed to trial, they would risk recovering nothing, even if the case went to trial on the issues of damages only.[4] Rule 61.01 makes sanctions a matter of the circuit court's discretion, and we are very doubtful that the circuit court would have been willing to impose sanctions equal to the amount that the Roths had obtained in their settlement agreement. Moreover, whether or not Rule 61.01(b)(1), with its specific provision for striking pleadings, dismissal, or judgment by default authorizes entry of monetary sanctions for improper interrogatory answers is in some doubt. *Fuller v. Padley*, 628 S.W.2d 719, 722 (Mo.App.1982); *but see Fairbanks v. Weitzman*, 13 S.W.3d 313, 326–27 (Mo.App.2000).

Because the Roths had secured some recovery, they should not be forced to forfeit it at the risk of recovering nothing. Rule 61.01 surely was not intended to punish a party who has already suffered prejudice while potentially rewarding the noncompliant party's fraud.

A federal court considered an analogous situation in *Cresswell v. Sullivan and Cromwell*, 668 F.Supp. 166 (S.D.N.Y.1987). In that case, the court considered whether or not a party alleging fraud during discovery should be required to seek to set aside a judgment, tender back a settlement's proceeds, and go to trial on the underlying claim. The court declared:

> If this were the rule, few plaintiffs would choose to enforce their claims of fraud in connection with a settlement, no matter how valid their cause of action.

---

4. Rule 61.01(b)(1) authorizes the circuit court to enter a default judgment against the defendants, and to submit the case for trial on the issue of damages. *See Hoodenpyle v. Schneider Bailey, Inc.*, 748 S.W.2d 683 (Mo.App.1988) (permissible sanction under Rule 61.01 includes rendering a default judgment and submitting a case to the jury solely on the issue of damages). A default judgment is a serious and drastic remedy usually reserved for those cases where a party has shown a "contumacious and deliberate disregard for the court's authority." *Spacewalker, Inc. v. American Family Mut. Insur. Co.*, 954 S.W.2d 420, 423 (Mo.App.1997); *see, e.g., Portell v. Portell*, 643 S.W.2d 18 (Mo.App.1982). Even assuming such a sanction would withstand judicial scrutiny under the facts of this case, it would also have subjected the Roths to the same risk that we conclude is unjust.

A plaintiff who must give up any benefit he has gained and risk receiving nothing in return will be reluctant to enforce his rights as a victim of fraud. Of course, he may ultimately gain more than he received in settlement the first time, either by going to trial this time around or settling for more[.] ... But this chance of receiving more does not justify the deterrent effect of requiring a plaintiff to give up the settlement he received[.]

[E]ven plaintiffs who have settled should not have to run still more risks in recovering their damages[.]

*Id.* at 172.

Whether or not the Roths can establish the elements of their fraud claim is wholly another matter. What we determine here is only that they have stated a claim upon which relief may be granted against Turbomeca and the respondent insurance companies. We do not disturb the circuit court's dismissal of those insurers not named as respondents to this appeal.

### Count II

The Roths contend that the circuit court erred in dismissing Count II of their petition in which they alleged negligent misrepresentation by Mendes and Mount, Cook, and Ghertner. The circuit court dismissed the count on the ground that, except in a few situations involving intentional torts, an attorney is not liable for an injury to a non-client arising from his representation of his client.

■ Generally, an attorney is not liable to a third party who is not his or her client because the attorney is not in privity of contract—or in an attorney-client relationship—with the third party. *Macke Laundry Service Limited Partnership v. Jetz Service Company, Inc.*, 931 S.W.2d 166, 176–77 (Mo.App.1996). Courts have found privity between an attorney and a third party in cases in which a client spe-

cifically intended for the attorney's services to benefit the third-party. *Donahue v. Shughart, Thomson and Kilroy, P.C.*, 900 S.W.2d 624, 626–29 (Mo. banc 1995). An attorney also may be liable to a third party in exceptional cases, such as cases involving fraud, collusion, or malicious or tortious acts by the attorney. The "exceptional circumstances" rule, as it has come to be called, has been limited to intentional torts. *Id.* at 627; *Macke*, 931 S.W.2d at 177–78.

Because the intended benefit rule requires specific intent to benefit the third party, the courts have held that an attorney is not liable to the third party for malpractice alleged to have occurred during adversarial proceedings on the rationale that adversaries would never desire to benefit one another. *Wild v. Trans World Airlines, Inc.*, 14 S.W.3d 166, 168 (Mo.App. 2000). The Roths argue that this rule should not be analogized to their case because they are suing the attorneys for negligent misrepresentation and not malpractice.

■ We need not determine this issue because, even if we were to agree with the distinction that the Roths make, it would not aid the Roths. The negligent misrepresentation of which they complain occurred in answers to interrogatories. As assumed by Rule 57.01, a party, not his or her attorney, is to answer interrogatories under oath. Indeed, the Roths pleaded that Turbomeca provided the interrogatory answers of which they complain. Thus, Turbomeca made the representations, and the circuit court properly refused to impute the representations to the attorneys. Although an attorney is an agent of his or her client and acts as the client's alter ego, the converse is not true. *Macke*, 931 S.W.2d at 176.

■ The Roths also pleaded, however, that the attorneys learned of the true limits of insurance coverage and did not con-

vey this information to them until it was too late. They seem to be claiming negligent misrepresentation by silence, but we need not address the claim because an attorney does not have a duty to disclose his client's misrepresentations to his or her client's adversary.

■■■■ The attorney-client privilege protects confidential communications between an attorney and client concerning matters regarding the representation. Rule 4–1.6; *State ex rel. Polytech, Inc. v. Voorhees*, 895 S.W.2d 13, 14 (Mo. banc 1995). The rule is not absolute, but an attorney does not have a duty to disclose privileged communications in anticipation that his or her client might commit a civil offense. An attorney's duty is to serve his or her client. Although an attorney should endeavor to avoid causing needless pain to opposing parties in litigation, the law does not impose a duty to do so. *See Bates v. Law Firm of Dysart, Taylor, Penner, Lay and Lewandowski*, 844 S.W.2d 1, 5 (Mo. App.1992).

The Roths point to Rules 4–4.1 and 4–8.4 as imposing a duty on attorneys to disclose to third parties. Rule 4–4.1 prohibits an attorney from knowingly failing to disclose a material fact when necessary to avoid fraud, but it makes an exception for those cases in which Rule 4–1.6 would prohibit disclosure. Rule 4–4.1(b). Rule 4–1.6 did not provide an exception permitting the attorneys to disclose what they knew, and although Rule 4–8.4 prohibits an attorney from engaging in dishonest, fraudulent, or deceitful conduct, it also declares that an attorney cannot disclose information protected by Rule 4–1.6. Rule 4–8.4(a) and (c).

■■■■ An attorney who knows that his or her client is making a misrepresentation is in a precarious situation. An attorney should not allow himself or herself to be used to perpetrate civil offenses, but what an attorney must do to avoid running afoul of his ethical obligations is another matter. The Rules of Professional Conduct do not form the basis for a civil cause of action. While they provide standards and violation of them result in disciplinary action, they do not augment an attorney's substantive legal duty or the extra-disciplinary consequences of violating such a duty. *See Greening v. Klamen*, 652 S.W.2d 730, 734 (Mo.App.1983); RULES OF PROFESSIONAL CONDUCT, Scope.[5]

We affirm the circuit court's dismissal of Count II of the Roths' petition for failure to state a claim.

### Count IV

In their final point, the Roths argue that the circuit court erred in dismissing Count IV of their petition. That count alleged a civil conspiracy among the defendants. They appeal, however, only as to the attorneys. The circuit court determined that a civil conspiracy between an attorney and client is not legally possible because, as agent and principal, they are not legally distinct and cannot conspire with one another. The circuit court also determined that the exceptional circumstances rule did not apply to allow the claim.

■■■■ A civil conspiracy is an agreement or understanding between at least two persons to do an unlawful act, or to use unlawful means to do an act that would otherwise be lawful. *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 780–81 (Mo. banc 1999). A conspiracy is not actionable in its own right because it does not exist apart from the statement of an underlying claim. *Rice v. Hodapp*, 919 S.W.2d 240,

---

**5.** We do not suggest that the attorneys are guilty of violating any rules of professional conduct. We note only that the accusation they have done so is an insufficient basis to argue the existence of a duty that, if breached, would support a civil cause of action for negligent misrepresentation.

245 (Mo. banc 1996). The unlawful acts done in pursuit of a conspiracy give rise to the action. Proving the conspiracy concerns only the co-conspirators' liability as joint tortfeasors. *Mark VII, Inc. v. Barthol,* 926 S.W.2d 128, 131 (Mo.App.1996); *Preferred Physicians Mutual Management Group v. Preferred Physicians Mutual Risk Retention,* 918 S.W.2d 805, 815 (Mo.App.1996).

Because an attorney is an alter ego of his or her client, a conspiracy between the attorney and client usually is not possible. *Creative Walking, Inc. v. American States Insurance Company,* 25 S.W.3d 682, 688 (Mo.App.2000); *Macke,* 931 S.W.2d at 176. If, however, an attorney, serving his or her own interest, acts outside the scope of an agency relationship, or if he or she, rather than the client, commits fraud or another intentional tort during the course of his or her representation, the attorney may be liable for conspiracy. *Macke,* 931 S.W.2d at 176–78.

Neither exception applies in this case. The Roths did not allege that the attorneys acted out of self-interest. Furthermore, the Roths did not appeal the circuit court's dismissal of Count III, which alleged fraudulent concealment by the attorneys; therefore, the Roths do not allege an underlying claim that the attorneys committed fraud or any other intentional tort. Although the Roths claim that Turbomeca committed fraud, that claim is not sufficient to support a civil conspiracy claim against the attorneys. The Roths do not allege that the attorneys committed fraud. That they allege that their clients did is insufficient. A client's misconduct cannot be imputed to his attorney, and, to the extent that it is attributed to the attorney as the client's agent, it does not support a conspiracy. *Id.*

The Roths argue that we must also consider their allegation that the attorney's negligent misrepresentation sup-

ported a claim of conspiracy. The argument fails because the Roths did not make an underlying claim for negligent misrepresentation against the attorneys. Furthermore, negligent misrepresentation is not an intentional tort and does not fit within the exceptional circumstances rule.

We affirm the circuit court's dismissal of Count IV of the Roth's petition for failure to state a claim.

### Conclusion

We reverse that portion of the circuit court's judgment dismissing Count I against Turbomeca and the respondent insurance companies. We affirm that portion of the circuit court's judgment dismissing Counts II and IV. We remand the case to the circuit court for further proceedings. We deny the pending motion to strike the Roths' reply brief.

THOMAS H. NEWTON, Judge, and RONALD R. HOLLIGER, Judge, concur.